Robert SHIVELY, Individually and as Administrator of the Estate of Troy Shively, Deceased, and Priscilla Shively, Plaintiffs Below, Appellants,

v.

Gershon KLEIN, M.D., and John Bartley Stewart, M.D., Defendants Below, Appellees.

Supreme Court of Delaware.

Submitted: June 28, 1988.
Decided: Oct. 21, 1988.

Bayard Marin, of Marin and Hudson, Wilmington, for appellants.

F. Alton Tybout, of Tybout, Redfearn, Casarino & Pell, Wilmington, for appellees.

Before CHRISTIE, C.J., and HORSEY and HOLLAND, JJ.

CHRISTIE, Chief Justice:

This case arises from a wrongful death action brought by the plaintiffs/appellants, the parents of a deceased minor child. The suit alleges that the defendant/appellee, Dr. Klein, was guilty of medical malprac-

tice because he failed to properly diagnose and treat the child's illness in the period immediately preceding her death.[1]

The child was born on August 19, 1968, with a congenital heart defect later diagnosed as ventricular septal defect. In 1978 the parents were first advised that the child should undergo surgery to correct the problem. The parents decided not to go forward at that time with the recommended surgery but to wait until the child was older. One of the secondary benefits of such surgery would have been a significant decrease in the risk of contracting serious internal infections including bacterial endocarditis, the infection from which the child suffered at the time of her death.

It is alleged that the defendant was guilty of medical malpractice during the period of time immediately prior to the child's death, from June 27, 1983, through June 29, 1983, the day before her death. On June 21, 1983, the child developed a fever which prompted appellants to seek medical attention. On June 23, 1983, she was examined by Dr. Klein's partner, Dr. Stewart, since Dr. Klein was away from the office that week. Dr. Stewart found that the child had an inflamed ear and prescribed penicillin. The next morning, she complained that her ear still hurt, and Mrs. Shively called the doctors' office for ear drops.

Although the fever lessened on June 25, it increased again on the evening of June 26. The following morning Mrs. Shively called Dr. Klein and informed him that the child still had a fever and her condition had not improved. Dr. Klein ordered a blood count, in the hope of detecting an infection. He did not, however, order a blood culture.

On June 28, Mrs. Shively brought the child to see Dr. Klein. Dr. Klein felt there still was a problem with the child's ear and sent her to the lab for lab work and an x-ray. On June 29, Mrs. Shively brought the child in for another examination. Dr. Klein determined that her condition had deteriorated, and he now suspected she had pneumonia and a urinary tract infection. He informed Mrs. Shively that the child should go to the hospital. The child was then admitted to the hospital, where it was soon determined she was critically ill. On June 30, she died from a rare condition known as bacterial endocarditis. Appellants allege that the failure of the defendant during the period immediately preceding her hospitalization to diagnose and treat the bacterial endocarditis with massive quantities of antibiotics led to the grave illness and death of their child.

After the trial the jury returned a verdict for the defendant. Appellants then submitted a motion for judgment notwithstanding the verdict and a motion for a new trial, both of which were denied by the Superior Court.

In this appeal, the appellants contend that: (1) evidence which might be construed as indicating "contributory negligence" on their part was erroneously admitted and resulted in reversible error; (2) a "loss of chance" instruction should have been included in the jury charge; (3) an improper statement of the law made by defendant's counsel constituted prejudicial conduct and reversible error; (4) the verdict was against the great weight of the evidence; and (5) the denial of judgment notwithstanding the verdict was error since accepting evidence in the light most favorable to the defendant, reasonable minds could only find in favor of the plaintiffs. All of appellants' arguments were addressed by the Superior Court in its opinion denying judgment notwithstanding the verdict and a new trial. *Shively v. Klein*, Super.Ct., No. 84C–JL–112, Poppiti, J. (Aug. 28, 1987) (Order) [available on WESTLAW, 1987 WL 16758]. We affirm the rulings of the Superior Court.

### I.

■ Appellants' first contention, that evidence of their "contributory negligence"

1. At the close of the plaintiffs' case, the claim alleging malpractice on the part of Dr. Stewart was dismissed. The plaintiffs were permitted to amend their complaint to name Dr. Stewart as a defendant because he practices medicine in a partnership with Dr. Klein. It is in this capacity that Dr. Stewart is a party to this proceeding.

was erroneously admitted into evidence, is without merit. The determination of whether proffered evidence is relevant lies within the sound discretion of the trial court, and its rulings will not be disturbed absent a clear abuse of that discretion. *Firestone Tire & Rubber Co. v. Adams,* Del.Supr., 541 A.2d 567, 570 (1988); *Lampkins v. State,* Del.Supr., 465 A.2d 785, 790 (1983). In this case, the Superior Court ruled that evidence of the parents' guilty feelings in not proceeding with recommended surgery at an earlier date was relevant as to their claim for damages based on emotional distress. Specifically, such evidence was deemed relevant to the issue of whether the emotional distress which they suffered was a result of the alleged malpractice alone or was instead based in part on their own feelings of guilt. The trial court instructed the jury that evidence of the parents' guilty feelings went solely to the issue of damages, not to the issue of causation. We find no abuse of discretion in the trial court's ruling on this point.

## II.

■ Appellants' second contention is that the Superior Court erred in failing to give a specific "loss of chance" instruction as part of the charge to the jury. Under the usual negligence rule, a plaintiff must prove that the doctor's inadequate treatment was the proximate cause of the patient's injury or death. 10 *Del.C.* § 3722(a); 18 *Del.C.* § 6853; *Laskowski v. Wallis,* Del.Supr., 205 A.2d 825, 826–27 (1964); *Alfonso v. Lund,* 10th Cir., 783 F.2d 958, 964 (1986). To prove proximate cause, the plaintiff has to show that the doctor's negligence was the *probable* cause of the injury or death. In quantifiable terms, "probable" is any likelihood greater than 50 percent.

Recently, however, in the limited area of medical malpractice, when the failure of a doctor to provide the required standard of care is shown to have increased the risk of harm to a patient, a principle sometimes referred to as the "loss of a chance doctrine" has been adopted in some states. This loss of a chance doctrine, based on the standard articulated in *Restatement (Second) of Torts* § 323 (1965),[2] has developed in part because of the difficulty in the medical malpractice area of proving precise degrees of causation, and in part because of the perceived unfairness in denying recovery when a doctor's negligence, although not shown to be the probable cause of the patient's malady or death, significantly decreased the patient's chance of recovery.

Courts have applied the loss of chance principle in a variety of ways. Some courts have used the doctrine to relax the causation standard from probable cause to a substantial cause. These courts permit a plaintiff to recover full compensation for injury or death when, although the patient had a less than 50 percent chance of recovery from his illness, the doctor's negligent treatment is found to be a substantial factor in his failure to recover. *See, e.g., Aasheim v. Humberger,* Mont.Supr., 695 P.2d 824, 828 (1985); *Thompson v. Sun City Community Hosp., Inc.,* 141 Ariz. 597, 688 P.2d 605, 615–616 (1984) (*en banc*). Other courts have applied the loss of chance principle only to damages. These courts do not permit a plaintiff to recover for the full amount that would be due on account of the injury. Instead, they allow a plaintiff to recover for the percentage of lost chance for which the doctor's negligence is deemed to have been responsible. Under this approach, the traditional standard of proximate causation is usually retained, but the measure of damages is altered. *See, e.g., McKellips v. Saint Francis Hosp., Inc.,* Okl.Supr., 741 P.2d 467, 476 (1987); *DeBurkarte v. Louvar,* Iowa Supr., 393 N.W.2d 131, 137 (1986) (*en*

---

2. Section 323 of the Restatement provides, in relevant part, that:

   One who undertakes ... to render services to another which he should recognize as necessary for the protection of the other's person ... is subject to liability ... for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

   (a) his failure to exercise such are increases the risk of such harm....

   *Restatement (Second) of Torts* § 323(a), at 135 (1965).

*banc*). Still other courts, however, have refused to accept the loss of chance doctrine in any form. *See, e.g., Pillsbury–Flood v. Portsmouth Hospital,* 128 N.H. 299, 512 A.2d 1126, 1129 (1986); *Gooding v. University Hosp. Bldg., Inc.,* Fla.Supr., 445 So.2d 1015, 1020 (1984). The Delaware courts have never applied the doctrine to alter the required proof of causation or as a specific separate element of damages.

Although appellants' pleading did not mention the loss of chance doctrine, at the conference on jury instructions which took place during the trial the appellants submitted a proposed instruction which applied the doctrine. The proposed instruction stated that if the jury found that the defendant's negligence "proximately caused a reduction in the [child's] chance of survival" at any time prior to her death, the "loss of chance is, in and of itself, compensable." The proposed charge would have shifted the cause of action from a death action to a reduction in the chance to live action. The appellants' instruction cited only the case of *Herskovits v. Group Health Cooperative of Puget Sound,* 99 Wash.2d 609, 664 P.2d 474 (1983) (plurality opinion), as support for the instruction. In the plurality opinion in the *Herskovits* case, the loss of chance principle is treated as both a theory which satisfies the plaintiffs' burden to produce evidence that the doctor caused the death and as a separate theory justifying recovery. If the loss of chance doctrine had been applied in Delaware in the manner it was applied in the *Herskovits* case and as plaintiffs requested that it be applied, the result would have been a drastic departure from the causation standards consistently applied in Delaware.

Delaware law requires that negligence be pleaded with particularity. Super.Ct. Civ.R. 9(b). The right to amend a pleading lies within the sound discretion of the trial judge, and this Court will reverse the ruling of the trial judge only if he has abused his discretion. *Laird v. Buckley,* Del. Supr., 539 A.2d 1076, 1079 (1988); *Mergenthaler, Inc. v. Jefferson,* Del.Supr., 332 A.2d 396, 398 (1975).

■ While we do not here rule out entirely the possible applicability of the doctrine in an appropriate case in Delaware, we note that it is important that any such innovative theory of negligence be pleaded with particularity and taken up at the pretrial conference so that the opposing side has the appropriate knowledge of the issue and the court has a chance to consider it before trial. *Chesapeake & Potomac Tel. v. Chesapeake Util.,* Del.Supr., 436 A.2d 314, 338 (1981). We also note that a change in the law of the magnitude suggested by plaintiffs would be an appropriate subject of legislation.

■ In this instance the loss of chance doctrine was not mentioned in the original pleading. The appellants did not move to amend the pleading when the trial commenced. It was only at the jury instruction conference that the appellants asked to have this new doctrine put before the jury. The circumstances under which testimony was elicited by the appellants concerning the loss of chance of survival do not indicate that the issue was tried by implied consent. *See Laird v. Buckley,* 539 A.2d at 1079. Under the circumstances, it was not error for the trial judge to refuse to charge the jury on a new principle, not yet adopted by any Delaware court, on which the case had not been tried.

### III.

■ Appellants also contend that a statement made by the defense in closing arguments which suggested that the jurors could rely on their own experience in the medical community with reference to the standard of care applicable in this case constituted reversible error. Appellants are required to show that the trial court abused its discretion in not granting a new trial or judgment notwithstanding the verdict due to this misstatement, and that such a misstatement was significantly prejudicial so as to deny them a fair trial. *Eustice v. Rupert,* Del.Supr., 460 A.2d 507, 510 (1983). Appellants fail to satisfy these burdens. There was a prompt objection to the defense's closing argument, and the trial court gave a cautionary instruction to

counsel at sidebar. The trial court was satisfied that this instruction, coupled with the court's ultimate instructions to the jury, which clearly stated the applicable law, prevented any possible prejudicial effect the alleged misstatement might otherwise have had. We rule that the trial judge did not err or abuse his discretion in this matter.

## IV.

Finally, appellants contend that the Superior Court erred in refusing to grant either a new trial because the verdict was against the weight of the evidence or judgment notwithstanding the verdict because the verdict was not supported by the evidence. A motion for a new trial based on the weight of evidence is granted only when the verdict is manifestly and palpably against the weight of the evidence. *Id.* at 510. In this case, expert witnesses offered conflicting opinions. Both opinions were supported by substantial evidence; therefore, the jury was free to accept the testimony of either medical expert. *See DiSabatino v. Wortman*, Del.Supr., 453 A.2d 102, 106 (1982). It is well settled that the trier of fact is the sole judge of the credibility of witnesses and the weight to be accorded their testimony and is responsible for resolving conflicts in the evidence. *See Williams v. State*, Del.Supr., 539 A.2d 164, 168 (1988); *Sheeran v. State*, Del.Supr., 526 A.2d 886, 892 (1987); *Younger v. State*, Del.Supr., 496 A.2d 546, 549 (1985); *Tyre v. State*, Del.Supr., 412 A.2d 326, 330 (1980). We hold that the Superior Court did not err in holding that the jury's verdict was supported by substantial evidence and was not contrary to the great weight of the evidence, and thus, we affirm the Superior Court as to these issues. *Firestone Tire & Rubber Co. v. Adams*, 541 A.2d at 573; *Storey v. Camper*, Del.Supr., 401 A.2d 458, 465 (1979).

\*    \*    \*    \*    \*    \*

This Court rules that the decisions of the Superior Court are correct and its judgment is AFFIRMED.