Ann M. CUDONE and Daniel
Cudone, Plaintiffs,

v.

John F. GEHRET, M.D., and John F.
Gehret, M.D., P.A., a Delaware
corporation, Defendants.

Civ. A. No. 91–585 MMS.

United States District Court,
D. Delaware.

April 29, 1993.

Richard A. Zappa, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for plaintiffs.

Warren B. Burt, Burt & Burt, Wilmington, DE, for defendants.

OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

## I. INTRODUCTION

Plaintiffs, Ann and Daniel Cudone, request this Court charge the jury on "increased

risk." The request arises from plaintiffs' assertion defendant, Dr. John F. Gehret, failed to adequately and timely diagnose Ms. Cudone's breast cancer and that the delay in diagnosis resulted in metastasis of that cancer. Plaintiffs' experts testified that based on a reasonable medical probability, Ms. Cudone's breast cancer would not have metastasized if there had been an earlier diagnosis. The experts also testified that based on a reasonable medical probability defendant's negligence resulted in the progression of Ms. Cudone's cancer from a "stage I" lesion to a "stage II" lesion with a concomitant increase in the chance that Ms. Cudone will experience a recurrence of her cancer. The issue now before the Court is whether plaintiffs may recover from defendants for this change in the statistical probability, i.e., "increased risk," that Ms. Cudone's cancer will recur. The Court holds that in the circumstances of this case a jury instruction on "increased risk" is appropriate.

## II. DISCUSSION

### A. Delineation of the Issue

The term "increased risk" has been the focus of numerous decisions with disparate results. Some of the confusion results from the failure to recognize that differing factual scenarios change the analysis of the issue.

The facts of the present case are as follows. One of plaintiffs' experts, Dr. Mikund Didolkar, testified that if Ms. Cudone's cancer had been diagnosed in October of 1989, when she first sought defendant's attention for a lump in her breast, the person doing the diagnosis would have identified a stage I cancer with no involvement of regional lymph nodes and no metastasis to distant organs. Dr. Didolkar testified that given the stage of her cancer in October of 1989, if her cancer had been treated at that time, the probability that Ms. Cudone would have experienced a recurrence of her cancer in the following ten years would have been 25%–30%, if not less. Ms. Cudone's cancer, however, was not diagnosed until July of 1990 at which time, according to Dr. Didolkar, her cancer had progressed to stage II. Given the stage of the cancer at the time of diagnosis, Dr. Didolkar assesses Ms. Cudone's chance of experiencing recurrence of her cancer within 10 years of diagnosis and treatment to be 50%–60%.

Plaintiffs also presented Dr. James Vogel as an expert. He testified that if Ms. Cudone's cancer had been diagnosed and treated in October of 1989 when it was at stage I, there would have been a 25% chance that Ms. Cudone's cancer would have recurred and been the eventual cause of her death. Dr. Vogel also testified that because Ms. Cudone's cancer was not diagnosed and treated until July of 1990, when it had progressed to stage II, the chances that the disease will recur and result in Ms. Cudone's death are 55%.

This testimony makes clear that the issue is whether there may be a recovery for an increase in the risk that a woman, now apparently cancer-free, will experience a recurrence of cancer as a result of alleged medical malpractice. This precise application of the concept of increased risk has not been explored by the Delaware courts. The Delaware Superior Court has given the charge requested here in some cases and not in others. Yet, no rationale for the determinations have been given in cases similar to the instant one. In addition, there exist two lines of cases to which the term "increased risk" has been applied. Analysis of these two lines of cases, however, reveals that neither explores the applicability of the concept of increased risk in a factual context analogous to that presented in this ongoing trial. After consideration of these related decisions, the Court finds application of the concept of increased risk to be appropriate in the circumstances of the present case.

### B. Existing Authority in Related Areas

#### 1. Delaware Superior Court Charges on Increased Risk

The parties in this case have requested a jury charge, the appropriateness of which has been considered by the Superior Court of Delaware on a number of occasions. Judges of the Superior Court are divided on the appropriateness of the charge.

The charge requested by plaintiffs is as follows:

Increased risk of harm is an element of damages that you may consider. You may award damages for an increased risk of a recurrence of cancer if the evidence established with a reasonable degree of medical probability that the defendants' conduct caused such increase in the risk of recurrence. If you award damages for an increased risk of recurrence, you should take into account that there would have been some risk of recurrence even if Mrs. Cudone's cancer had been present in 1989 and discovered and treated at that time. You may award damages only to the extent of any increase in the risk of recurrence resulting from medical malpractice.

Requests by plaintiffs to give this, or a similar charge, were granted in the recent cases of *Wolf v. Papastavros*, C.A. No. 90C–MR–154 (Del.Super.Ct. Dec. 10, 1992), *Van Ostenbridge v. Brooks*, C.A. No. 90C–02–004 (Del.Super.Ct. Sept. 10, 1992), *Swede v. Cigna Health Plan of Delaware, Inc.*, C.A. No. 87C–SE–171 (Del.Super.Ct. Feb. 8, 1989), *Lang v. Taylor*, C.A. No. 86C–MY–184 (Del.Super.Ct. Sept. 1988), and *Hubbard v. Robinson*, C.A. 84C–AU–34 (Del.Super.Ct. June 9, 1987). The Superior Court refused to give such an instruction in *Hesseltine v. Wehner*, C.A. No. 90C–AP–33 (Del.Super.Ct. Nov. 4, 1991) and in *Shively v. Klein*, C.A. No. 84C–JL–112, 1987 WL 16758 (Del.Super.Ct. August 28, 1987) (determining not to give requested charge in wrongful death action where charge as requested sought alteration in traditional standards of causation) *aff'd*, 551 A.2d 41 (Del.1988) (affirming determination not to give charge on basis opposing party had not been informed of this theory of plaintiff's case until trial already in progress).

It appears that the Superior Court in cases of the type before this Court, i.e. cases other than wrongful death actions, have been willing to give the charge. *Wolf*, C.A. No. 90C–MR–154 (medical malpractice suit involving breast cancer); *Van Ostenbridge*, C.A. No. 90C–02–004 (same); *Lang*, C.A. No. 86C–MY–184 (same). It is difficult, however, to precisely determine that court's direction. The charge has been given in cases factually similar to the present case, but without supporting analysis. The only real published analysis of the issue was in a case concerning circumstances different from those before this Court. *See Shively*, C.A. No. 84C–JL–112, 1987 WL 16758 (Del.Super.Ct. August 28, 1987) (charge not appropriate in wrongful death action where charge sought alteration in traditional standards of causation) *aff'd*, 551 A.2d 41 (Del.1988) (affirmance based on fact opposing party had not been informed of this theory of plaintiff's case prior to trial). Furthermore, the Delaware Supreme Court has not addressed the applicability of the concept of increased risk to circumstances such as those here presented.

Given the paucity of authority in the Delaware State Court system, this Court has the task of predicting how the Delaware Supreme Court would rule on facts similar to those presented during the course of this trial. *Nationwide Ins. Co. v. Resseguie*, 980 F.2d 226, 230 (3d Cir.1992).

## 2. Suits for Injury Incurred Subsequent to Alleged Medical Malpractice

The first line of cases considering the appropriateness of the concept of increased risk is illustrated by the Delaware Supreme Court's consideration of the appropriateness of giving a jury charge on "increased risk" (also called "loss of chance") in a suit for wrongful death allegedly resulting from medical malpractice. In *Shively v. Klein*, 551 A.2d 41 (Del.1988), the parents of a deceased child claimed the defendant's failure to diagnose the child's illness as bacterial endocarditis led to her death. The Court there framed the discussion that would follow by stating:

Appellants' second contention is that the Superior Court erred in failing to give a specific "loss of chance" instruction as part of the charge to the jury. Under the usual negligence rule, a plaintiff must prove that the doctor's inadequate treatment was the proximate cause of the patient's injury or death. To prove proximate cause, the plaintiff has to show that the doctor's negligence was the *probable* cause of the injury or death.

*Shively*, 551 A.2d at 43 (citations omitted) (emphasis in original). When the dimensions of the case presented to the Court in *Shively*

are defined, the following appears: after being treated by a physician, an individual actually suffered a conventional physical injury, i.e., death, and, according to the plaintiffs, the doctor's alleged negligence played a role in the occurrence of that subsequent injury (death). The dimensions of the case, as thus defined, drove the Court's analysis.

In its analysis the Delaware Supreme Court first examined the application of the "loss of chance" concept by other courts to the situation before it. It found that the doctrine had been employed in other jurisdictions to alleviate "the perceived unfairness in denying recovery when a doctor's negligence, although not shown to be the probable cause of the patient's malady or death, significantly decreased the patient's chance of recovery." *Id.* at 43. It explained that the concept of increased risk had been applied in two different ways, either to relax the causation standard, or to modify an award of damages. The Court upheld the lower court's decision not to give the requested charge on increased risk on procedural grounds. In *dicta*, however, the Supreme Court was ambivalent toward use of the charge. It indicated application of the concept to the damages portion of a case rather than to the causation portion could be acceptable, especially where all parties were informed in advance that plaintiff would be relying on that concept at trial. On the other hand, the Court determined that the application of the concept sought by plaintiffs, i.e., one which relaxed the standard of causation, "would have been a drastic departure from the causation standards consistently applied in Delaware." *Id.* at 44. Such a drastic change, opined the Court, would be more appropriately left to the legislature. *Id.*

The parties in the instant case have based their arguments in favor of and in opposition to the plaintiffs' proposed charge on the discussion in *Shively.* However, the issue as presented in *Shively* is similar, but not the same as, the case *sub judice.* The *Shively* Court's analysis of the issue of lost chance or increased risk was driven by the direction from which the parties and the Court came at the problem. In that case the most dreaded of outcomes, death allegedly occasioned by the defendant's malpractice, had already

occurred. Death was the injury for which plaintiffs sought compensation. It was this focus on death as the injury that caused the Court to question whether application of the concept of increased risk in that context raised issues of causation which might be antithetical to traditional concepts of causation.

The *Shively* Court and other courts have grappled with the causation problems by trying to determine whether a doctor who has failed to timely diagnose a patient's illness should be held liable for that patient's death. One problem being, for example, that the patient may have had less than a 50% chance of recovering from the illness even if it had been diagnosed in a timely fashion. In that case, it would be impossible to say that to a reasonable medical probability, i.e., greater than 50%, the doctor's negligence was the cause of the patient's death. Where this and similar circumstances are presented, courts are divided on the issue whether claims for increased risk (or lost chance) are appropriate. According to Darrell L. Keith, *Loss of Chance: A Modern Proportional Approach to damages in Texas,* 44 Baylor L.Rev. 759 (1992), "Of the jurisdictions which have addressed lost chance, at least nineteen have adopted the lost chance doctrine, seven states have rejected the concept, and at least six remain unsettled on the loss of chance concept. In medical malpractice actions, however, a definite judicial trend recognizing lost chance of survival or recovery has developed."

The injury for which plaintiffs here seek redress is different than that considered by *Shively.* In the instant case there has not yet been, nor hopefully will there be, a subsequent death or physical injury for which plaintiffs seek damages. Rather, plaintiffs' injury is the fact that Ms. Cudone possesses a significantly higher risk of recurrence of cancer than she would have possessed had her cancer been diagnosed in October, 1989. Viewing the increased risk itself as the injury, there is not the same threat to the concept of proximate cause as in *Shively.* Although *Shively* and similar medical malpractice actions for subsequent physical injury or death bear a resemblance to the instant case,

their cause to question use of the increased risk concept due to possible discord with traditional notions of proximate cause is absent here.

### 3. Suits for Exposure to Toxic Chemicals

A second line of cases addressing the issue of increased risk is one in which plaintiffs seek damages for the fact that they possess a higher potential for contracting cancer as a result of exposure to some cancer causing agent. Courts have differed in their approach to plaintiffs' claims for increased risk under these circumstances.

Some courts have denied plaintiffs' requests. Those courts have focussed on the fact that the disease about which plaintiffs claim to have been put at risk may never occur. *Deleski v. Raymark Industries, Inc.*, 819 F.2d 377, 380–81 (3d Cir.1987) (no recovery permitted solely for the increased risk of future harm from exposure to asbestos particularly where there is merely possibility of future harm; applying Pennsylvania and New Jersey law) (relying on *Herber v. Johns–Manville Corp.*, 785 F.2d 79 (3d Cir. 1986)); *Herber v. Johns–Manville Corp.*, 785 F.2d 79, 82 (3d Cir.1986) (upholding trial court's decision to exclude evidence on plaintiff's alleged increased risk of cancer due to exposure to asbestos where no evidence plaintiff would probably contract cancer in the future; finding objective of requirement that disease will probably occur is to ensure damages not awarded for injury that probably will not occur); *Ayers v. Jackson Township*, 189 N.J.Super. 561, 461 A.2d 184, 187 (Ct.1983) (claim for increased risk of contracting cancer, liver and kidney disease found too speculative since alleged increased risk was not caused by bodily injury and no evidence any plaintiff would probably contract any such disease in future).

Other courts have permitted claims for increased risk, albeit with some limitations. For example the court in *Brafford v. Susquehanna Corp.*, 586 F.Supp. 14, 17–18 (D.Colo. 1984), determined that damages for enhanced cancer risk were recoverable where plaintiffs possessed an accompanying present physical injury. In *Hagerty v. L & L Marine Services, Inc.*, 788 F.2d 315, 319 (5th Cir.) *reh'g denied*, 797 F.2d 256 (5th Cir.1986), the court held that a plaintiff exposed to toxic chemicals could pursue a claim for increased risk of contracting cancer in the future if he could show his exposure will more likely than not lead to cancer. Also in *Devlin v. Johns–Manville Corp.*, 495 A.2d 495, 500 (N.J.Super.Ct.1985), the court found that plaintiffs suffering "substantial bodily harm" as a result of exposure to asbestos could pursue damages for increased risk of contracting cancer in a limited way, i.e., for increased medical surveillance and for emotional harm.

Although more similar to the instant situation than the first line of cases, the exposure cases are not precisely on point with the instant case. In those suits plaintiffs seek compensation for a disease from which they do not presently suffer, nor with which they have ever been afflicted and with which they may never (indeed in many cases more likely than not will never) be afflicted. In the present case, plaintiff has already suffered from the disease for which she now claims to be at an increased risk. Further, unlike many of the above cases in which the courts were concerned with the speculative nature of the future occurrence of disease, Doctor Vogel testified that it is more likely than not that she will in fact be afflicted with the disease in the future. Testimony of defendant's first expert witness, Dr. Robert J. Baker, was the same. However, Dr. James J. Stark, another of defendant's experts, testified Mrs. Cudone has an 80% chance of survival.[1] Thus, the concern driving the analysis of those courts wary of application of the concept of increased risk is absent here.

### C. Application of the Concept of Increased Risk to the Present Circumstances

The Court now turns to the question whether the circumstances of the present case present a cognizable claim for increased

---

1. This difference in survival rate presents an issue for the jury, but does not affect the "at risk" analysis.

risk that plaintiff will contract cancer in the future. The answer to this question is yes.

While one of defendant's experts differed, both plaintiffs' expert Dr. Vogel and defendant's expert Dr. Baker testified that it is more probable than not that Ms. Cudone will experience a recurrence of her cancer within her lifetime. The testimony also shows that due to the delay occasioned by the alleged failure of defendant to diagnose Ms. Cudone's cancer in October, 1989 Ms. Cudone's chance of recurrence within ten years has jumped from less than 25%–30% to 50%–60%. Similarly, Dr. Vogel testified that the chances the cancer will recur in her lifetime increased from 25% to 55%. In other words, her recurrence rate has more than doubled as a result of defendant's alleged failure to timely diagnose her cancer. This in itself is an injury for which Ms. Cudone may seek a remedy if the jury accepts the testimony of plaintiffs' witnesses over that of defendant's witness.

The factors causing concerns for previous courts facing issues related to the instant one are not present here. In both lines of cases explored above, the overriding concern of those courts that expressed reservation about applying the increased risk concept was that it was merely possible, but not probable plaintiffs' later injury, i.e. contraction of cancer, death, etc., was or would be due to defendants' conduct. In the instant case, however, if plaintiffs' experts' testimony is accepted by the jury, the predicted future disease is reasonably certain to occur and if it does, more likely than not, the reason for its recurrence will be defendant's alleged failure to properly diagnose Ms. Cudone's cancer.

In *DePass v. United States*, 721 F.2d 203 (7th Cir.1983), less compelling circumstances led Judge Posner to dissent. There plaintiff suffered an amputation of one leg as a result of being hit by a car. The majority upheld the trial court's determination not to award damages for an increased risk of suffering heart disease as a result of losing his leg. Judge Posner distinguished the case, *Morrissy v. Eli Lilly & Co.*, 76 Ill.App.3d 753, 32 Ill.Dec. 30, 394 N.E.2d 1369 (1979), cited by the majority for the proposition that "possi-

ble future damages in a personal injury action are not compensable unless reasonably certain to occur." In *Morrissy*, plaintiff had not suffered any "ascertainable injury" while Mr. DePass had been seriously injured. According to Judge Posner, "[T]he only issue is the extent of his injury, an issue on which courts traditionally do not impose a heavy burden of proof on plaintiffs." *Id.* at 208 citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562–65, 51 S.Ct. 248, 250–51, 75 L.Ed. 544 (1931); *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280, 1288–89 and n. 10 (1978); *Hicks v. United States*, 368 F.2d 626, 632–33 (4th Cir.1966). The present case is similarly distinct from those cases in which courts felt constrained to question the applicability of the increased risk concept. Ms. Cudone has suffered ascertainable injury in the form of radical mastectomy and attendant pain and suffering, and such injury extends to the significant increase in risk that her cancer will recur.

Failure to give a jury instruction of "increased risk" based upon the factual scenario presented in this case would yield an absurd result. If the increased risk charge were not given, an innocent victim who has been placed in greater peril by reason of the alleged medical malpractice may not be compensated for the peril unless she sustains a recurrence of the cancer by the time of trial. *Cf. Evers v. Dollinger*, 95 N.J. 399, 471 A.2d 405 (1984) (Handler, J. concurring).

For the reasons set forth above and as limited by he facts of this case, I conclude the Delaware Supreme Court would hold that a plaintiff such as Ms. Cudone is entitled to a jury instruction permitting recovery for any increase in the risk of recurrence of her cancer that the jury may find was occasioned by any negligence on the part of defendant.

## III.  CONCLUSION

This Court finds the concept of increased risk may be appropriately applied to the circumstances presented by this case. The parties have submitted the charge on this issue which they believe to be most appropriate. Defendants stated that if the Court were to find application of the concept of

increased risk appropriate in this case, they had no objection to the submitted charge. Therefore, the charge submitted by the parties will be given.