# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT DUNCAN, | : | |
| | : | |
| Plaintiff, | : | K16C-12-020 JJC |
| | : | In and For Kent County |
| v. | : | |
| | : | |
| STTCPL, LLC, SERVICE ENERGY, | : | |
| LLC, and COASTAL PUMP AND | : | |
| TANK, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

Submitted:  January 27, 2017
Decided:  February 28, 2017

## <u>MEMORANDUM OPINION</u>

### *Upon Defendants' Motion to Dismiss – DENIED*

Patrick C. Gallagher, Esquire, Law Office of Curley, Dodge, Funk & Street, LLC, Dover, Delaware, Attorney for Plaintiff.

Michael W. Arrington, Esquire, Parkowski, Guerke & Swayze, P. A., Wilmington, Delaware, Attorney for the Defendants.

Scott T. Earle, Esquire, Cohen, Seglias, Pallas, Greenhall & Furman, P.C., Wilmington, Delaware, Attorney for the Defendants.

Clark, J.

## I. Introduction

Before the Court is a motion to dismiss for failure to state a claim filed by Defendants STTCPL L.L.C. and Service Energy L.L.C. (hereinafter collectively "STTCPL").[1]  STTCPL leased Plaintiff Robert Duncan's (hereinafter "Mr. Duncan's") gasoline station in Harrington, Delaware.  In 2009, the Delaware Department of Natural Resources and Environmental Control (hereinafter "DNREC") found environmental contamination at that location.  After that discovery, Mr. Duncan and STTCPL entered into a Settlement Agreement and Release of Claims (hereinafter "Settlement Agreement") that broadly addressed liability for contamination at the Harrington site.

On January 23, 2012, DNREC issued another notice of violation regarding the Harrington gas station.  The notice cited the same project identification number that was the subject of the Settlement Agreement.  DNREC seeks significant additional compensation from Mr. Duncan for the remediation costs associated with the 2012 environmental contamination at the Harrington property. As a result, Mr. Duncan is suing STTCPL for those costs, alleging STTCPL's failure to indemnify him as required under the original lease agreement.  Mr. Duncan is also suing Defendant Coastal Tank and Pump, Inc. (hereinafter "Coastal") for the negligent cleanup of the site and STTCPL as Coastal's alleged principal.

STTCPL responds seeking dismissal of Mr. Duncan's claims alleging that the Settlement Agreement between the parties released his future claims against STTCPL for environmental contamination at the property.  STTCPL also seeks dismissal of the negligence claim alleging insufficiency of the Complaint.  When

---

[1] At this stage, the record does not reveal the relationship between STTCPL and Service Energy. However, in the Settlement Agreement the two entities are referred to interchangeably and one person signed on behalf of STTCPL and Service Energy without identifying that person's capacity.  Therefore, the Court refers to these entities collectively as STTPCL throughout this memorandum.

reading the Settlement Agreement as a whole, however, and considering documents integral to the Complaint, Mr. Duncan could conceivably recover for his claims. For this reason and those set forth herein, STTCPL's and Coastal's motions to dismiss are **DENIED**.[2]

## II. Background and Arguments of the Parties

As this is a motion to dismiss pursuant to Superior Court Civil Rule 12(b)(6), the facts referenced herein are those found in Mr. Duncan's Complaint and the two documents incorporated by reference in the Complaint. Prior to 1994, Mr. Duncan owned and operated a gasoline station in Harrington, Delaware, and during the time he operated it, the station sold only leaded gasoline. In 1994, Mr. Duncan entered into a lease agreement with New Dawn Enterprises, Inc. (hereinafter "New Dawn") for several properties including the gasoline station at issue here. This agreement contained an indemnity clause, which provided

> Lessee will indemnify and hold Lessor harmless against, all claims, demands and causes of action, . . . for . . . damage to any property arising from Lessee's tenancy of the premises and not caused by the negligence, omission, intentional act or breach of duty by Lessor or its agents.

At some point during the end of 1999 or the beginning of 2000, New Dawn sold or assigned its business to STTCPL which included an assignment of the lease for Mr. Duncan's gasoline station. Mr. Duncan consented to this assignment, and in furtherance of it, he entered an Assignment and Lease Modification with New Dawn and STTCPL whereby the original lease remained in effect, including its indemnification clause. This amended lease included a provision stating "[t]he

---

[2] After oral argument on this motion, Coastal filed a motion to dismiss as well. Its motion incorporated only the arguments set forth by STTCPL and asserted no additional basis for dismissal of Mr. Duncan's negligence claim against Coastal. Accordingly, for the reasons set forth herein, Defendant Coastal Pump and Tank's motion to dismiss is also denied.

Landlord shall be responsible for and shall hold harmless STTCPL . . . from any claims for environmental damage which has occurred prior to the time that they have become a tenant on the property."

DNREC, prior to May 2009, alleged the existence of environmental contamination at the gasoline station due to lead in the soil. After DNREC issued its notice of violation, Mr. Duncan and STTCPL entered the Settlement Agreement on May 12, 2009. Pursuant to this agreement, Mr. Duncan assumed responsibility, financial and otherwise, for all future costs related to alleged environmental damage at the Harrington property. The Settlement Agreement also specifically references Mr. Duncan's release of future claims for contamination involving DNREC Project Identification Number K0804036. Elsewhere, the Settlement Agreement broadly references Mr. Duncan's intention to indemnify STTCPL for all future monitoring and remediation costs at the Harrington location. On the other hand, still elsewhere in the Settlement Agreement, this assumption of responsibility, contradictorily, is "limited to solely those environmental matters *currently identified* by DNREC and the remediation required by DNREC in regard thereto . . . ."

The present controversy centers on a January 23, 2012 DNREC notice of violation to both Mr. Duncan and STTCPL for alleged gasoline contamination of soil and groundwater at the Harrington station. The January 2012 DNREC notice references Project Identification Number K0804036 which was also specifically referenced by the Settlement Agreement as being included in Mr. Duncan's release of any future claims. The new January 2012 notice related to the underground storage tanks at the station. As alleged however, that notice applied to contamination from unleaded gasoline as opposed to leaded gasoline, which had been the subject of the prior remediation.

4

On December 18, 2013, STTCPL hired Costal to remove the underground storage tanks at the station. As alleged, once Coastal excavated and removed the storage tanks, the company negligently took the contaminated fill dirt and placed it directly back into the ground, worsening the contamination.

In June 2014, DNREC and STTCPL, apart from Mr. Duncan, entered into a Settlement Agreement and Release regarding the 2012 environmental damage. Pursuant to that agreement, STTCPL paid $70,000 to DNREC in exchange for DNREC releasing STTCPL from further liability for the 2012 environmental damage. After STTCPL reached this agreement with DNREC, DNREC asserted that Mr. Duncan was responsible for a remaining $492,014 in remediation costs incurred at the site.

Thereafter, when STTCPL refused to indemnify him as required by the terms of the original lease, Mr. Duncan filed a complaint alleging that STTCPL breached the lease's indemnity provision. He argues that the Settlement Agreement's release of liability did not cover what he characterizes as a new DNREC violation, and therefore, under the lease's indemnity clause, STTCPL is responsible for the contamination and its remediation.

Additionally, Mr. Duncan alleges that his tenants breached the lease because STTCPL did not pay the required rent. Namely, according to Mr. Duncan, STTCPL owes approximately $48,000 in back rent. Finally, Mr. Duncan sues Coastal for its alleged negligence in removing the underground storage tanks and STTCPL as Coastal's alleged principal. Mr. Duncan claims that Coastal breached its duty of care by removing the underground storage tanks and returning contaminated soil to the ground in violation of Federal and State law.

In response, STTCPL argues that the Court cannot grant Mr. Duncan relief on either his breach of contract or negligence claims. As to the contract claim regarding environmental harm, STTCPL argues that the Settlement Agreement

5

between Mr. Duncan and STTCPL controls and applies fully to the January 2012 notice of violation. Pursuant to that document's release language, STTCPL argues that Mr. Duncan is responsible for the costs of remediation. Furthermore, as to his rent claim, STTCPL claims that a portion of the $70,000 paid to DNREC included $48,000 in escrowed rent that STTCPL paid to DNREC on behalf of Mr. Duncan.

STTCPL also argues that with regard to Mr. Duncan's negligence claim, Mr. Duncan was contractually responsible for the condition of the soil at the property pursuant to the 2009 Settlement Agreement. Because he was contractually responsible, STTCPL argues that he cannot maintain a negligence claim. Further, STTCPL also argues that Mr. Duncan's negligence claim is set forth in a conclusory fashion and does not provide sufficient specificity to state a claim. Namely, STTCPL argues that Mr. Duncan did not sufficiently allege proximate cause or damages in his Complaint. According to STTCPL, the Court cannot grant Mr. Duncan relief based on the allegations as presented and should dismiss his Complaint pursuant to Superior Court Civil Rule 12(b)(6).

### III. Standard of Review

When deciding a motion to dismiss for failure to state a claim, the Court must accept as true all well-pleaded allegations in the complaint.[3] The test for sufficiency is a broad one: the complaint will survive the motion to dismiss so long as "a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[4] However, the Court will not "accept conclusory allegations unsupported by specific facts," nor will the Court "draw

---

[3] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[4] *Id.* (citing *Klein v. Sunbeam Corp.*, 94 A.2d 385 (Del. 1952)).

6

unreasonable inferences in favor of the non-moving party."[5]  Stated differently, a complaint will not be dismissed unless it clearly lacks factual or legal merit.[6]

Furthermore, when examining a 12(b)(6) motion, "[t]he complaint generally defines the universe of facts that the trial court may consider . . . ."[7]  If the Court looks outside the facts set forth in the complaint, generally it will convert a motion to dismiss into a motion for summary judgment and the parties will be given an opportunity to expand the record.[8]  However, "when the document [or documents are] integral to a plaintiff's claim and incorporated into the complaint" the trial court need not convert the motion into a motion for summary judgment.[9]

## IV.  Discussion

Mr. Duncan referenced specific sections of the lease and the Settlement Agreement in his Complaint.  He also referenced DNREC's January 2012 notice of violation.  However, he did not provide copies of those documents with his filing.  STTCPL, however, provided copies of the Settlement Agreement and DNREC's January 2012 notice of violation as exhibits to their motion to dismiss.  At oral argument, both parties agreed that the Court should consider the two exhibits but not convert this motion into a motion for summary judgment because they were explicitly referenced in and are integral to Mr. Duncan's Complaint.  After

---

[5] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (quoting *Clinton v. Enterprise Rent–A–Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

[6] *Diamond State Tel. Co. v. Univ. of Del.*, 269 A.2d 52, 58 (Del. 1970).

[7] *In re General Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).

[8] *Id.*

[9] *Vanderbilt Income and Growth Assocs., LLC v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996).

considering their positions and the nature of the documents, the Court agrees and will not convert this motion into a motion for summary judgment.

With regard to the motion to dismiss for failure to state a claim, the Court must determine whether Mr. Duncan could conceivably recover on his claims. Here, regarding Mr. Duncan's breach of contract claims, after drawing all reasonable inferences in favor of Mr. Duncan, the Court finds that he could conceivably recover. Accordingly, STTCPL's motion to dismiss with regard to Mr. Duncan's breach of contract claims is denied. Additionally, when drawing all reasonable inferences in favor of Mr. Duncan regarding his negligence claim, the Complaint also sufficiently states a claim upon which relief can be granted.

## A. Mr. Duncan adequately pleads a breach of contract claim.

The issues here center on Mr. Duncan's claim that the Settlement Agreement's terms do not cover the contamination generating the additional $492,014 in costs following DNREC's January 2012 notice of violation. Absent his release of these claims, he argues that STTCPL must indemnify him for these environmental contamination and remediation costs. In response, STTCPL claims that the language of the Settlement Agreement is broad enough to cover this allegedly new environmental violation, making Mr. Duncan responsible for all the costs associated with the contamination and its remediation.

The Settlement Agreement contains broad language throughout that would appear to grant STTCPL a release from liability for all contamination including contamination found after the parties signed the agreement.[10] For instance, Paragraph Eight of the agreement acknowledges that the agreement is

---

[10] For example, the agreement provides "Duncan hereby assumes the responsibility for all further investigation and/or remediation and monitoring required by DNREC in connection with the alleged environment damage at the Harrington Location." It also provides that "Duncan hereby assumes the financial responsibility for all costs, fees and expenses relating to or arising out of

8

for the purpose of making a full and final settlement of any and all claims, demands, damages, liabilities, attorneys' fees, and/or costs which either party or his/her successors, heirs, and assigns may have had, may now have, or may in the future have relating to the further investigation and/or remediation and monitoring required by DNREC (Project ID's K0009122 and K0804036) at the Harrington Location and for the express purpose of precluding forever any future or additional claims arising out of the same except for those that may be related to the enforcement of this agreement.

However, as a matter of contract interpretation the Court must read the Settlement Agreement as a whole.[11] In reading the agreement as a whole, the Court is required to give effect to every term of the instrument, if at all possible.[12] Here, Paragraph Nine includes language that appears to limit the language found in Paragraph Eight and other portions of the document. Namely, Paragraph Nine provides that

[t]he parties hereby acknowledge and agree that the responsibility and/or liability for environmental matters at the Harrington Location assumed by Duncan under this Agreement is *limited to solely those environmental matters currently identified* by DNREC and the remediation required by DNREC in regard thereto (including both the remediation currently required by DNREC and any future DNREC required remediation as to the *currently identified environmental issues*)(emphasis added).

Apart from the unqualified release language providing for the release of all future claims for contamination, the language found in Paragraph 9 limits the Settlement Agreement to only those environmental matters identified by DNREC at the time the parties entered into the agreement in May 2009. That provision, apart from the

---

all further required investigation and/or remediation and monitoring required by DNREC at the Harrington Location."

[11] *E.g.*, *Nw. Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996).

[12] *Council of Dorset Condo Apartments v. Gordon*, 801 A.2d 1, 7 (Del. 2002).

balance of the document, conceivably reserves Mr. Duncan's right to seek indemnification for new contamination.

The Delaware Supreme Court addressed a similar issue of contract interpretation in the context of a motion to dismiss in *VLIW Technology, L.L.C. v. Hewlett-Packard Co.*[13] There, the Court confronted an agreement between Hewlett-Packard and Multiflow Computer, Inc., which had provisions within the contract providing for nearly opposite results regarding confidentiality.[14] In interpreting the agreement, the Supreme Court recognized that since the agreement provided for two sets of competing, contradictory interpretations, the contract was ambiguous.[15] After finding ambiguity, the Court in turn recognized that "[b]ecause the provisions at issue in the Agreement are susceptible to more than one reasonable interpretation, for purposes of deciding a motion to dismiss, their meaning must be construed in the light most favorable to the non-moving party."[16] Therefore, when there are multiple interpretations of a contract and the non-moving party's interpretation of the contract is reasonable, at this preliminary stage, the Court must construe the contract in favor of the non-moving party.

A basic tenet of contract construction provides that "[w]here there is an apparent repugnance or conflict between two clauses or provisions of a contract, it is the province and duty of the court to find harmony between them and reconcile them if possible."[17] If they cannot be reconciled, then an ambiguity exists. Under

---

[13] 840 A.2d 606, 609 (Del. 2003).

[14] *Id.* at 614.

[15] *Id.; see also* 17A Am. Jur. 2d *Contracts* § 326 (2016) (recognizing that "[a]mbiguity exists where the terms of the contract are inconsistent on their face . . . .").

[16] *VLIW Tech., LLC*, 840 A.2d at 615.

[17] 17A Am. Jur. 2d *Contracts* § 326 (2016).

10

Delaware law, "ambiguity exists when the provisions in controversy are reasonably or fairly susceptible of different interpretations."[18]

At this preliminary stage, the outcome of this motion is the same whether the language in Paragraph Nine is read to limit the balance of the document or separately read to create an ambiguity in the contract. In reading the competing provisions to be ambiguous, the Settlement Agreement is reasonably and fairly susceptible to two differing interpretations. A reasonable interpretation of the contract recognizing the intent that it be a broad release would be warranted from the referenced intent in the Whereas clauses, as well as Paragraphs Two, Three, and Eight. Together these provisions seem to unequivocally provide for complete insulation against STTCPL's future liability. Further, as is apparent at the initial pleading stage, the Settlement Agreement in Paragraph 8 provides for a complete release of liability for DNREC Project Identification Number K0804036. This identical Project Number is referenced as the remediation at issue in the January 2012 Notice of Violation for which Mr. Duncan now seeks indemnification.

However, another reasonable interpretation of the contract giving effect to Paragraph Nine (whether by finding it consistent and limiting as to the whole document or contradictory to the above-mentioned provisions), is that the language found therein limits the release of liability to only those environmental matters that were currently identified in 2009 when the parties entered the Settlement Agreement. Here, alternatively by either giving effect to Paragraph 9 of the Settlement Agreement, or by recognizing that the contract has two reasonable but differing interpretations, Mr. Duncan pleads facts that could conceivably provide for recovery.

---

[18] *E.g.*, *VLIW Tech., LLC*, 840 A.2d at 615; *Kaiser Aluminum Corp. v. Matheson*, 681 A.2d 392, 395 (Del. 1996).

As the Delaware Supreme Court held in *VLIW Technology LLC*, when the non-moving party cites a reasonable interpretation of the contract, the Court looks to that interpretation when deciding a motion to dismiss pursuant to Rule 12(b) (6).[19] Under that reasonable interpretation of the document, the Court then must determine, whether the non-movant could prevail on any set of facts. When drawing all favorable inferences in favor of Mr. Duncan in that light, he could recover.

Namely, the allegations permit a reasonable inference that DNREC issued the 2012 Notice of Violation due to new contamination. DNREC's notice included data DNREC collected from the gasoline station.[20] The *earliest* study cited in the notice is dated October 16, 2009, four months *after* the parties entered the Settlement Agreement.[21] Furthermore, in the notice at issue, DNREC noted that "dissolved lead may be omitted from future sampling." A reasonable inference at this stage is that the study cited provides that the 2012 violation was not generated by the sale of leaded gasoline. Since Mr. Duncan alleges that he only sold leaded gasoline while he operated the station and that the 2009 violation related to only contamination from lead, there is a reasonable inference that this contamination occurred after the parties entered into the Settlement Agreement. Furthermore, that the January 2012 notice of violation referred to the exact same Project Identification Number as that completely released in the agreement is not dispositive for Rule 12(b) (6) purposes because there is no evidence available

---

[19] 840 A.2d at 615.

[20] DNREC January notice of violation, Defendant's motion to dismiss ex. A.

[21] The Court recognizes that the January 23, 2012 notice of violation refers to this as "[t]he most recent data," permitting a contrary inference that the notice does in fact apply to the prior identified contamination. Since no testing data from before the Settlement Agreement is cited in the notice, however, a favorable inference for Mr. Duncan is warranted.

regarding DNREC's procedures for identifying projects. Since the Court must construe the Settlement Agreement in favor of Mr. Duncan's interpretation and evaluate only his well pleaded allegations at this stage, Mr. Duncan could prevail on this breach of contract claim.

Likewise, the Court must also deny STTCPL's motion regarding Mr. Duncan's second breach of contract claim for unpaid rent. Under the lease, STTCPL was required to pay rent. Mr. Duncan alleges that STTCPL did not pay $48,000 in back rent owed since the underground storage tanks were removed in December 2013. STTCPL argues that a portion of the $70,000 paid pursuant to a settlement agreement with DNREC constituted escrowed rent. STTCPL argues that this payment was made on behalf of Mr. Duncan to DNREC and therefore was not a breach of the lease agreement. In response, Mr. Duncan argues that he never authorized STTCPL to pay escrowed rent to DNREC on his behalf, and therefore, STTCPL breached the lease.

At this stage, the parties did not supply the Court with a copy of the lease. Accordingly, there is no indication whether the rent obligation was somehow conditional or that STTCPL had a contractual right to withhold rent, place it into escrow, and then pay it to a third party. Nor has it been established at this point that Mr. Duncan breached the contract in a way that could have justified STTCPL's anticipatory repudiation of the contract by withholding rent. The only issues before the Court at this point are that rent is allegedly owed and that STTCPL allegedly breached that obligation.

While it is possible that STTCPL obtained the authority to make payments to DNREC on Mr. Duncan's behalf or were otherwise justified in doing so, there is no indication of that before the Court. Here, STTCPL points to no assignment of right, statutory provisions, contractual right, or court order permitting this action. Accordingly, STTCPL's motion to dismiss the claim for back rent is denied.

13

**B.     Mr. Duncan adequately pleads a negligence claim.**

Mr. Duncan also sues (1) Coastal for its alleged negligence, and (2) STTCPL vicariously as Coastal's principal.  Delaware law requires a party to plead negligence with particularity.[22]  Superior Court Civil Rule 9(b) requires that "the circumstances constituting . . . negligence . . . [to] be stated with particularity."[23]  Delaware courts have interpreted Rule 9(b)'s pleading standard to be one of fairness and notice.[24]  To satisfy this pleading standard, a complaint must set forth enough detail to inform an opponent of the "charges so as to be able to prepare a defense to them."[25]  In order to satisfy this purpose, "it is usually necessary to allege only sufficient facts out of which a duty is implied and a general averment of failure to discharge that duty."[26]

Here, Mr. Duncan's Complaint sufficiently does both.  First, the Complaint adequately alleges a general duty of care owed by Coastal in that Coastal had the duty to exercise reasonable care when removing the underground storage tanks.  Admittedly, while the Complaint references only general violations of Federal and State regulations, the Complaint in effect incorporates the January 2012 notice of violation by stipulation of the parties.  That document specifically identifies various regulations creating duties, which in fact DNREC at one point alleged STTCPL violated since the notice of violation was also targeted at STTCPL.  For instance, the January 2012 notice of violation provides after noting, "[t]he specific

---

[22] *E.g.*, *Shively v. Klein*, 551 A.2d 41, 44 (Del. 1988) (citing Super. Ct. Civ. R. 9(b)).

[23] Super. Ct. Civ. R. 9(b).

[24] *E.g.*, *Fox v. Fox*, 729 A.2d 825, 826 n.2 (Del. 1999).

[25] *E.g.*, *Chesapeake & Potomac Tel. Co. of Md. v. Chesapeake Utils. Corp.*, 436 A.2d 314, 338 (Del. 1981).

[26] *State Farm v. General Electric Co.*, 2009 WL 5177156, at *5 (Del. Super. Ct. Dec. 1, 2009) (citation omitted).

regulation violations are detailed below," a number of specific Underground Storage Tank regulations forming duties that Mr. Duncan alleges the three defendants breached.

Second, Mr. Duncan's allegations regarding Coastal's breach are not conclusory. Namely, he specifically alleges that Coastal returned contaminated soil to the same hole from where it removed the gas tanks, thereby worsening the contamination and increasing the costs associated with its remedy. In response, STTCPL has not contested agency at this stage of the pleadings or that the company would be potentially liable for Coastal's negligence. Instead, STTCPL limits its argument to alleging that because Mr. Duncan was contractually responsible for the soil (which the Court understands to mean that he released all such claims, including claims for negligence), he cannot bring a negligence claim. Further, STTCPL argues that Mr. Duncan's damages and proximate cause allegations were merely conclusory and do not adequately state a claim.

Here, the Court finds that Mr. Duncan set forth his negligence claim with adequate detail to place the defendants on sufficient notice to prepare a defense. Furthermore, he adequately alleges agency for purposes of vicarious liability.[27] After reviewing the Complaint, the Court is satisfied that it contains sufficient detail to meet Rule 9(b)'s standard regarding all elements of a negligence claim. Namely, the allegations sufficiently place STTCPL on notice that but for the negligent actions of Coastal, the environmental harm (and the accompanying costs) would not be as great. Finally, Mr. Duncan sufficiently alleges that Coastal's actions resulted in damages in the amount of $492,014 as well as other various costs associated with the contamination. Accordingly, the Court denies (1)

---

[27] *See Fisher v. Townsends, Inc.*, 695 A.2d 53, 58 (Del. 1997) (stating that "if the principal is the master of an agent who is a servant, the fault of the agent, if acting within the scope of employment, will be imputed to the principal by the doctrine of *respondeat superior*").

15

Defendant STTCPL's and (2) Defendant Coastal's motions to dismiss Mr. Duncan's negligence claim.

## V.    Conclusion

For the aforementioned reasons, STTCPL's motion to dismiss for failure to state a claim is DENIED.    Furthermore, since Coastal's motion regarding this matter incorporates only those arguments raised by STTCPL, Coastal's motion to dismiss is DENIED for the same reasons.

**IT IS SO ORDERED.**

/s/Jeffrey J Clark
Judge