254 N.J. Super. 359 (1992)
603 A.2d 547
RONALD KAROL AND ARLENE KAROL, PLAINTIFFS-APPELLANTS,
v.
BORI BERKOW, M.D., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 29, 1992.
Decided March 6, 1992.
*360 Before Judges GAULKIN, MUIR, Jr. and LANDAU.
Bryan D. Garruto argued the cause for appellants (Garruto, Galex & Cantor, attorneys).
*361 John R. Orlovsky argued the cause for respondent (Orlovsky, Moody & Gabrysiak, attorneys; John R. Orlovsky and Paul F. Schaaff, Jr., on the brief).
The opinion of the court was delivered by GAULKIN, P.J.A.D.
This medical malpractice case was brought by Ronald Karol and his wife against Bori Berkow, M.D., for his alleged failure to timely diagnose and treat a melanoma. The Law Division dismissed the complaint as filed more than two years after the cause of action accrued. N.J.S.A. 2A:14-2. The case requires us to determine when an increased-risk-of-harm cause of action accrues.

I
Karol first consulted Berkow in August 1983 about a mole on his lower back. According to Karol, Berkow told him it was a fatty cyst and not to worry about it. Karol returned to Berkow in August 1984 because the mole had started to bother him. A biopsy disclosed that the tissue was a malignant melanoma. Karol underwent surgery on August 31, 1984.
On August 5, 1986, Karol and his wife sued Berkow for his alleged failure to properly diagnose and treat the mole. During the pre-trial proceedings, Karol obtained an opinion from a medical expert that the one-year delay in diagnosis and excision of the lesion increased the possibility of Karol's dying from melanoma during the next 7 1/2 years from 3% to 23%. In light of that report and the absence of clinical evidence of disease, Karol voluntarily dismissed his complaint without prejudice.
In 1989, a nodule appeared adjacent to the surgical scar. Following surgery on June 13, 1989, the growth was diagnosed as metastatic malignant melanoma. On February 22, 1991, Karol and his wife filed a new complaint against Berkow, alleging the same malpractice pleaded in the earlier complaint and a resultant recurrence of melanoma. Berkow moved for *362 summary judgment, contending that the cause of action accrued in 1984 and thus was time-barred. In response, Karol argued that prior to the recurrence of the melanoma, his increased risk of death, i.e., from 3% to 23%, was "a damage for which he would never have been able to make a claim." Upon that recurrence, he maintained, the risk of death from melanoma became a probability; counsel tells us that the risk is now approximately 70%. In dismissing the complaint, the motion judge reasoned that Karol would have been entitled to recover damages for the pre-recurrence increased risk of death. He concluded that the cause of action thus had accrued in 1984 even though Karol may not have then known "the full extent of the injury."
We reverse. Our reading of the case law persuades us that Karol's increased-risk-of-future-harm cause of action did not accrue until that harm occurred in 1989, less than two years before this action was filed.

II
The increased-risk-of-harm cause of action was first recognized in Evers v. Dollinger, 95 N.J. 399, 471 A.2d 405 (1984). There plaintiff had consulted a doctor about a lump in her breast. Although the doctor told her it was of no significance, the lump continued to grow and seven months later was diagnosed as a malignancy. At the time of trial, defendant was disease-free; she offered expert reports that 25% of patients with her type of cancer would have a recurrence even after prompt and accurate diagnosis and treatment, but that a seven-month delay would increase the risk to an extent which "cannot be assessed." Id. at 405, 471 A.2d 405. The trial judge rejected the proffer because the experts "were unable to determine the magnitude of the risk of recurrence and distant spread of the cancer." Id. The Appellate Division affirmed, finding "no showing of any damages proximately flowing" from the malpractice. Id. at 406, 471 A.2d 405.
*363 The Supreme Court reversed, holding that the proofs showed that the tumor increased in size and infiltrated the adjoining duct before it was correctly diagnosed and excised; that alone was a "sufficient physical injury to withstand defendant's motion." Id. Moreover, plaintiff could recover for mental distress attributable not only "to her having the cancer but also to the growth of the tumor during the time proper treatment was withheld and from the realization, following the confirmation of her malignancy, that defendant's delay in her treatment had increased the risk that she would again fall victim, perhaps fatally, to the disease."[1]Id.
With respect to the claim for increased risk of harm, the Court noted that, while her appeal was pending before it, plaintiff's breast cancer was found to have metastasized to the lung and she was now "faced with a terminal illness." Id. at 403-404, 471 A.2d 405. The Court found that plaintiff was entitled to damages if she proved that the delay in diagnosis and treatment "increased the risk of recurrence and that such increased risk was a substantial factor in bringing about the condition from which plaintiff now suffers, or, put differently, that the harm of which there was but increased risk has now become a reality." Id. at 406, 471 A.2d 405. In support of that conclusion, the Court invoked Restatement (Second) of Torts § 323(a) (1965):
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm * * *.
Id. at 417, 471 A.2d 405. The court found it unnecessary to determine "whether the unquantified (and unquantifiable) but nevertheless certain increase in the risk, standing alone, is *364 sufficient injury to sustain plaintiff's cause of action" (id. at 406, 471 A.2d 405) or "[w]hether `increased risk,' standing alone, is an actionable element of damage in a malpractice case" (id. at 412 n. 7, 471 A.2d 405).
In a concurring opinion, Justice Handler urged that the Court recognize "unquantified increased risk of future cancer as a compensable form of medical injury and an element of damages independent of an actual recurrence of cancer." Id. at 429, 471 A.2d 405. Among other reasons, Justice Handler pointed out that if the cause of action requires that the risked harm be incurred, "no action for an actual but unquantified enhancement of risk could be brought before that unforeseeable time when a plaintiff experiences a recurrence of disease." Id.
The Supreme Court addressed another increased-risk-of-harm claim in Ayers v. Jackson Tp., 106 N.J. 557, 525 A.2d 287 (1987), an action brought under the Tort Claims Act. Plaintiffs there had been exposed to toxic substances that leached into their drinking water from a landfill operated by the defendant. None of the plaintiffs had sustained any specific illnesses because of their exposure, but rather claimed damages for "the enhanced risk of future illness attributable to such exposure." Id. at 577, 525 A.2d 287. Apparently plaintiffs' expert witness could not quantify the degree of that risk. Id. at 592, 525 A.2d 287. The Court thus had to confront the question, left open in Evers, whether increased risk standing alone is an actionable element of damage. After canvassing out-of-state cases and academic authorities, the Court declined to recognize "plaintiffs' cause of action for the unquantified enhanced risk of disease." Id. at 598, 525 A.2d 287 (emphasis in original). Again, however, the Court reserved an important question:
We need not and do not decide whether a claim based on enhanced risk of disease that is supported by testimony demonstrating that the onset of the disease is reasonably probable ... could be maintained under the Tort Claims Act.
Id. at 599, 525 A.2d 287.
Ayers also addressed the statute of limitations issue as it bore on toxic tort claims. Noting "the long latency period *365 typical of illnesses caused by chemical pollutants" and our "discovery rule" (id. at 582, 525 A.2d 287), the Court held that N.J.S.A. 2A:14-2 would not preclude "a timely-filed cause of action for damages prompted by the future `discovery' of a disease or injury related to the tortious conduct at issue in this litigation" (id. at 583, 525 A.2d 287). Accordingly,
neither the statute of limitations nor the single controversey rule should bar timely causes of action in toxic-tort cases instituted after discovery of a disease or injury related to tortious conduct, although there has been prior litigation between the parties of different claims based on the same tortious conduct.
Id. at 584, 525 A.2d 287.
Justice Handler again wrote separately, urging that an unquantified enhanced risk of harm should be compensable. He read the majority opinion to reject that claim "because the risk of future disease does not rise to the level of `reasonable probability'" and asked "why a risk that generates the `reasonable probability' of future injury can be compensated while one that `significantly enhances' the likelihood of future injury cannot." Id. at 617, 525 A.2d 287.
The question of "reasonable probability of future injury" was again addressed in Mauro v. Raymark Indus., Inc., 116 N.J. 126, 561 A.2d 257 (1989). There plaintiff sued several manufacturers of asbestos-containing products to which he was exposed during his employment. Among other claims, plaintiff urged that his exposure had increased his risk of developing cancer; his expert witness, however, could not quantify the degree of the increased risk, nor could he say that it was probable that plaintiff would contract cancer. Id. at 130, 561 A.2d 257. The expert was prepared to testify about "statistical and epidemiological studies indicating that between twenty percent and forty-three percent of those afflicted with asbestos-related disease eventually die of cancer" (id.), but that proffer was barred because it had not been disclosed in the witness's report.
The Supreme Court affirmed the trial judge's dismissal of the enhanced risk claim. The Court refused to adopt a rule of law "that tort victims should have a present cause of action for a *366 significant but unquantified enhanced risk of future injury." Id. at 132, 561 A.2d 257. Rather, it applied the "long-standing rule in New Jersey ... that prospective damages are not recoverable unless they are reasonably probable to occur." Id. at 133, 561 A.2d 257.
Justice Handler dissented, urging that recovery should be available for the unquantified but "palpable and demonstrable" risk of future cancer. Id. at 147, 561 A.2d 257. He found too restricted what he characterized as the Court's solution to allow recovery only "if a plaintiff has a 51% chance of developing cancer." Id. at 150, 561 A.2d 257.
The Supreme Court most recently addressed these issues in Scafidi v. Seiler, 119 N.J. 93, 574 A.2d 398 (1990), where plaintiff claimed that defendant's failure to properly treat her early labor caused the premature birth and death of her infant child. Plaintiff's expert testified that defendant should have promptly administered a tocolytic agent, which would have been "seventy-five- to eighty-percent effective in arresting premature labor" (id. at 98, 574 A.2d 398); defendant's expert opined that "only twenty-five percent of patients receiving tocolytic therapy respond to it," that he could not determine whether such therapy would have helped plaintiff, but that "the sooner it had been started, the better it would have been for her." Id. at 99, 574 A.2d 398. The jury returned a verdict for defendant.
The Supreme Court reversed, holding that the trial judge had erroneously refused to charge the jury in keeping with Evers, i.e., "to consider whether defendant's negligence increased the risk of harm and whether such increased risk was a substantial factor in producing the harm." Id. at 104, 574 A.2d 398.
Again, Justice Handler wrote separately. Noting that in both Evers and Ayers he had questioned "the fairness and wisdom of a requirement that future or eventual harm actually be sustained in order to permit a recovery for malpractice that increases the risk of future harm" (id. at 117, 574 A.2d 398), he repeated his view that

*367 the occurrence of ultimate harm should not be a condition precedent to the recovery of compensatory damages. If that chance or risk is demonstrated by evidence grounded in reasonable medical possibility, it should, based on ordinary experience and notions of fairness and sound policy, constitute a sufficient basis for redress.
Id. at 118, 574 A.2d 398. Neither the majority nor the dissenting opinion makes any reference to Mauro.

III
Although the cases do not answer all questions that come to mind, they do fix certain boundaries. A plaintiff may recover for an enhanced risk of harm if the harm has in fact occurred and the increased risk can be found to have been a substantial factor in producing it. That is the holding of Evers and Scafidi. If the harm has not occurred, Mauro suggests that a plaintiff may nevertheless recover upon a sufficient statistical or other quantified showing of a reasonable medical probability that the harm will occur (although the Court's later focus in Scafidi on the actual occurrence of harm, without discussing Mauro, is puzzling). But the Supreme Court has consistently refused, notwithstanding Justice Handler's urgings, to recognize a cause of action for increased risk of harm where the harm has not occurred and plaintiff cannot quantify or otherwise show the likelihood of future harm as a matter of probability.
The cases thus lead ineluctably to the conclusion that Karol had no increased-risk-of-harm cause of action when he filed his first complaint in 1986. Although his expert witness was able to quantify the increased risk arising from Berkow's alleged negligence, from 3% to 23%, that increased risk clearly would not support a finding that the apprehended consequence, i.e., recurrence of the melanoma, was "reasonably probable" at that time. See Pollock v. Johns-Manville Sales Corp., 686 F. Supp. 489 (D.N.J. 1988) (increased risk claim could not be presented to jury where plaintiff's expert would testify that plaintiff had a 43% chance of developing cancer). The increased-risk-of-harm *368 cause of action did not accrue until the apprehended harm  the metastasis  became a reality in 1989. That was the same time, according to Karol's proffer, that it became more than "reasonably probable", i.e., 70% likely, that Karol would die of the melanoma. Until then, the statute of limitations could not begin to run. Ayers, 106 N.J. at 583, 525 A.2d 287.[2]
Berkow's contrary argument is flawed. To be sure, in 1984 Karol had viable causes of action for the 1983-84 growth of the melanoma and for mental distress caused by the alleged malpractice. But it does not follow, as Berkow reasons, that the 1989 claim is now time-barred "because there was a cognizable injury [in 1984] upon which [Karol] could recover in the first suit." The fact remains that Karol had no increased-risk-of-harm cause of action until 1989. As Ayers makes clear, that later-accruing claim is not barred by the statute of limitations or by the single controversy rule, even if "there has been prior litigation between the parties of different claims based on the same tortious conduct." 106 N.J. at 584, 525 A.2d 287.
Our reading of Ayers and the other Supreme Court decisions compels us also to reject our concurring colleague's suggestion that the timeliness of an increased-risk-of-harm complaint should be "measured from discovery of even a very limited cause of action." (Op. at 369, 603 A.2d at 552). In our view, requiring that a complaint be filed to assert a not-yet-accrued cause of action would contradict the language of the statute of limitations and all existing precedent. Moreover, we question the soundness of our colleague's proposal that lawsuits be filed, taken through discovery, and then warehoused in anticipation *369 of the possibility that a cause of action may arise in the future. In any event, we are satisfied that it is not appropriate for this court to mandate such a procedure.
The order dismissing the complaint is reversed. The matter is remanded to the Law Division for all further proceedings.
LANDAU, J.A.D., concurring.
I concur in this result.
There should, however, be a fairer way for us to balance the important public policy of providing adequate compensation for disease-causing tortious injury, when it becomes probable, with the equally important public interests in repose, prompt notice of claim and timely opportunity for defendants to make discovery while records and memories are fresh, third-party defendants can be identified, and applicable current standards of duty or care can be established.
In the present case, notice was provided to defendants only because the first complaint was filed and withdrawn. Unfortunately, this would not be the case in most instances of hiatus between causation and serious manifestation. I would prefer to hold here that existing case law[1] does not preclude a requirement that, consistent with Vispisiano v. Ashland Chem. Co., 107 N.J. 416, 527 A.2d 66 (1987), and Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973), a complaint must be timely filed, measured from discovery of even a very limited cause of action. However, I would permit a plaintiff to move, at or shortly after filing, for an order permitting discovery and further pleadings, but specially deferring trial to accommodate a flexible manifestation period, extendible or terminable depending upon the special circumstances of the case.
*370 Such a procedure would be applicable to cases where the possible existence of a disease-producible injury, but not its probable extent, is known or knowable at the time of suit. It would require and permit a plaintiff to be diligent without the "Catch-22" foreclosure of later recovery for presently unprovable catastrophic injury. At the same time, defendants would be spared the injustice of being forced to defend suit on unexplored, long-forgotten facts. Such a procedure would also be more equitable in "claims-made" insurance situations, particularly where the insured has retired, changed carriers or changed coverage.
New Jersey courts have always demonstrated flexibility in creatively adjusting to the needs of justice. Although this proposed complaint-and-deferral method may pose practical judicial administration problems, I believe that these would be far outweighed by a dividend of increased fairness to both plaintiffs and defendants.
NOTES
[1] Plaintiff concedes that his causes of action for the growth of the melanoma between the time of the misdiagnosis and the 1984 surgery, for the mental distress during that period and for the mental distress arising from his knowledge that the delay in treatment had increased the risk of death, all accrued in 1984 and are now time-barred.
[2] The facts in this case do not require us to determine whether or under what circumstances an increased-risk-of-harm cause of action brought after the actual occurrence of harm may be held time-barred upon a showing that plaintiff knew or ought to have known more than two years earlier that the likelihood of future harm was reasonably probable. See Vispisiano v. Ashland Chem. Co., 107 N.J. 416, 527 A.2d 66 (1987); Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973).
[1] Scafidi v. Seiler, 119 N.J. 93, 108-109, 574 A.2d 398 (1990), Mauro v. Raymark Indus., Inc., 116 N.J. 126, 133-34, 561 A.2d 257 (1989), Ayers v. Jackson Tp., 106 N.J. 557, 592, 525 A.2d 287 (1987), and Evers v. Dollinger, 95 N.J. 399, 413, 417, 471 A.2d 405 (1984).