**UNITED STATES of America, Defendant Below, Appellant,**

v.

**Danny L. ANDERSON, Plaintiff Below, Appellee.**

**No. 200, 1995.**

Supreme Court of Delaware.

Submitted: Oct. 11, 1995.

Decided: Nov. 22, 1995.

Gregory M. Sleet, United States Attorney, and Patricia C. Hannigan (argued), Assistant United States Attorney, Wilmington, for Appellant.

Richard P.S. Hannum and Julie Sandler of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, and Michael W. Wagman (argued), pro hac vice, of Wagman, Ashworth, Kreider & Wright, Lancaster, Pennsylvania, for Appellee.

Before VEASEY, C.J., HARTNETT and BERGER, JJ.

VEASEY, Chief Justice:

The following questions of law have been certified by the United States District Court for the District of Delaware pursuant to Article IV, Section 11(9), of the Delaware Constitution and Supreme Court Rule 41:

I. *Recovery for Increased Risk of Harm Viewed as a Present Change in Position*

 a. May a plaintiff who successfully asserts a claim pursuant to 18 *Del.C.* § 6853 recover, as an element of damages, for increased risk of harm stemming from the fact that defendant's failure to diagnose, which constitutes a deviation from the standard of care, caused, to a reasonable medical probability, plaintiff to become more likely to suffer a recurrence of cancer?

 b. May a plaintiff bring an independent cause of action to recover for increased risk of harm stemming from the fact that defendant's failure to diagnose, which constitutes a deviation from the standard of care, caused, to a reasonable medical probability, plaintiff to become more likely to suffer a recurrence of cancer?

II. *Recovery for Increased Risk of Harm Viewed as a Probability of Future Injury*

 a. May a plaintiff who successfully asserts a claim pursuant to 18 *Del.C.* § 6853 recover, as an element of damages, for increased risk of future cancer where the evidence shows that the plaintiff probably will not suffer the future cancer?

 b. May a plaintiff bring an independent cause of action to recover for increased risk of future cancer where the evidence shows that the plaintiff probably will not suffer the future cancer?

We hold that increased risk of harm accompanied by physical injury is a compensable element of damages under Delaware law. Accordingly, we answer questions I.a. and II.a. in the AFFIRMATIVE. We respectfully decline, however, to answer questions I.b. and II.b. since an answer to these questions would not affect the outcome of the litigation.

Questions I.a. and II.a. appear to overlap considerably. Question II.a. is subsumed within I.a. since the undisputed facts indicate that plaintiff has only a 15 percent risk of suffering a recurrence. Therefore, any decision with respect to I.a. necessarily must consider the fact that plaintiff "probably will not suffer the future cancer." Questions I.b. and II.b. also follow the same form. In the interests of clarity, we will consider questions I.a. and II.a., and I.b. and II.b., together.

## I. FACTS

The following undisputed facts are set forth in the *Certificate of Question of Law:*

1. Agents of the defendant, United States of America, rendered medical care to the plaintiff, Danny L. Anderson, between February and May of 1989 for complaints of pain in the groin and scrotal area.

2. He was examined on six occasions during that period by a total of five physicians with the Department of Veterans Affairs. No testicular mass was found on examination. After ruling out several other diagnoses, the last entry in plaintiff's medical records was "left epididymis ten-

der may be due to secondary vasectomy." He was told to return for follow up "if necessary."

3. Plaintiff was not seen again for any relevant complaints until he went to a private physician in August of 1990, when he was diagnosed as having right testicular seminoma (cancer).

4. At the time of this diagnosis, the cancer had metastasized from the testicle to form a retroperitoneal tumor that blocked the function of plaintiff's right kidney.

5. The right testicle was surgically removed a few days after this diagnosis.

6. The metastatic disease required two additional surgical procedures and a course of chemotherapy, both of which would have been unnecessary in the absence of the metastasis.

7. The metastatic tumor disappeared following chemotherapy and the plaintiff has been disease-free since.

8. If plaintiff can show that agents of the defendant were negligent in his medical care, pursuant to 18 *Del.C.* § 6853, the defendant is liable for the damages proximately caused by that negligence.

9. A negligent delay in diagnosis could cause recurrence of plaintiff's cancer at another point in the body.

10. If plaintiff's testicular seminoma had been treated when it was Stage I, he would have had close to a 100 percent chance of avoiding recurrence of the cancer.

11. At the time plaintiff's testicular seminoma was treated, at Stage II–C, he had an 85 percent chance of avoiding recurrence of the cancer.

Plaintiff filed suit in the United States District Court for the District of Delaware under the Federal Tort Claims Act, 28 *U.S.C.* § 2671 *et seq.*, alleging that agents of the defendant breached the standard of care in failing timely to diagnose his testicular cancer. Count I of the complaint seeks damages for plaintiff's personal injuries resulting from the progression of the disease, including an increase in the risk that the cancer will recur. Count II "states an independent cause of action and alleges that defendant's actions caused a separate and distinct injury to plaintiff, specifically the increase in his risk of suffering a recurrence of cancer." *Certificate of Question of Law* at 1.

## I. DAMAGES FOR INCREASED RISK

This Court has not considered whether an increased risk of future harm is compensable when that harm is not probable. This Court recently considered, however, the related "loss of chance" doctrine in a wrongful death action. *United States v. Cumberbatch*, Del.Supr., 647 A.2d 1098 (1994). The loss of chance doctrine may allow a plaintiff to recover, to some extent, for the loss of a not better than even chance of a favorable outcome, although in *Cumberbatch* we held the doctrine is not applicable in a wrongful death action. In describing the increased risk doctrine, this Court in *Cumberbatch* stated:

> As its name implies, the increased risk doctrine provides that a person may recover damages if the person's risk of suffering a negative medical condition is increased because of medical malpractice. The increased risk doctrine is considerably broader than the loss of chance doctrine since the former appears to apply even if the plaintiff has a greater than 50 percent chance of survival prior to the malpractice. Moreover, the increased risk doctrine might apply to situations not involving death as the potential outcome.

*Id.* at 1100 n. 3. Most courts which have adopted the increased risk doctrine choose to characterize the injury as the increased risk of harm. *Cudone v. Gehret*, D.Del., 821 F.Supp. 266, 271 (1993) ("This [increased risk of recurrence] in itself is an injury for which [the plaintiff] may seek a remedy ..."); *Swain v. Curry*, Fla.Dist.Ct.App., 595 So.2d 168, 172 (1992); *Petriello v. Kalman*, 215 Conn. 377, 576 A.2d 474, 483 (1990); *Falcon v. Memorial Hosp.*, 436 Mich. 443, 462 N.W.2d 44, 52 (1990).

Since loss of chance and increased risk of harm both rely on similar theoretical underpinnings, it is necessary to consider them together. For instance, it would not be coherent to adopt increased risk without also

adopting loss of chance. Allowing a cause of action before the unfavorable result occurs would necessarily imply one after its occurrence. Loss of chance could be adopted, however, without also adopting increased risk. This would merely require plaintiffs to wait until the condition occurred and then sue for loss of chance. *See, e.g., Karol v. Berkow,* Ct.App.Div., 254 N.J.Super. 359, 603 A.2d 547 (1992) (plaintiff can sue for enhanced risk of harm if the harm has in fact occurred and the increased risk was a substantial factor). If the injury is the increased risk or lost chance and not the ultimate result, however, it makes little sense to force plaintiffs to wait for the unfavorable result.

The increased risk doctrine has been employed in cases involving late diagnoses which allowed cancer to spread. *Cudone, Swain, Petriello, supra.* The doctrine has also been employed in cases involving skull fractures and resulting future susceptibility to meningitis. *Feist v. Sears, Roebuck & Co.,* 267 Or. 402, 517 P.2d 675, 680 (1973); *Davis v. Graviss,* Ky.Supr., 672 S.W.2d 928, 932 (1984) (damages may include increased likelihood of future complications and mental distress resulting therefrom); *Schwegel v. Goldberg,* 209 Pa.Super. 280, 228 A.2d 405 (1967) (plaintiff can recover damages for 1 in 20 chance of suffering seizures caused by skull fracture); *Traylor v. United States,* 6th Cir., 418 F.2d 262 (1969). The Oregon Supreme Court stated:

We agree that medical testimony to the effect that as the result of a serious physical injury, there will be a 'predisposition' to the contracting of some disease, i.e., a possibility, is not sufficient evidence to support an award of damages for permanent injury and cannot be properly considered by a jury for that purpose.

We hold, however, that such testimony is sufficient as the basis for a finding by the jury of some disability. We believe, as a matter of common sense, that a jury can properly make a larger award of damages in a case involving a skull fracture of such a nature as to result in a susceptibility to meningitis than in a case involving a skull fracture of such a nature as not to result in any such danger, risk, or susceptibility. *Feist,* 517 P.2d at 680.

■ Although this Court rejected the loss of chance doctrine in a wrongful death action in *Cumberbatch,* it did not reject the concept of loss of chance as a compensable injury in itself. This Court stated: "If an injury is suffered in the loss of chance situation, it is the reduced possibility of survival which is the basis of the claim, not the death itself." *Cumberbatch,* 647 A.2d at 1103; *see also Falcon v. Memorial Hosp., Inc.,* 436 Mich. 443, 462 N.W.2d 44, 52 (1990); *Thompson v. Sun City Community Hosp., Inc.,* 141 Ariz. 597, 688 P.2d 605, 616 (1984).[1] We rejected loss of chance in a wrongful death action because the statute requires that the negligence *cause the death. Cumberbatch,* 647 A.2d at 1103. We went on to state, however, that:

The alleged harm is to the person whose chance of survival might be reduced. It might be logical, therefore, for that person (or the legal representatives of the person) to be able to sue and recover compensation irrespective of whether death has occurred. This principle, which reflects the proportional approach to the loss of chance doctrine, might not require a change in Delaware's traditional causation principles.

*Id.* at 1103; *see also Cudone,* 821 F.Supp. at 269 ("Viewing the increased risk itself as the injury, there is not the same threat to the concept of proximate cause as in *Shively.*"). Since the injury is viewed as the lost chance or increased risk, the plaintiff is not attempting to prove that the negligence caused the death (loss of chance) or will cause the death (increased risk). The plaintiff must prove that the negligence more probably than not

1. Other jurisdictions which have adopted a proportional loss of chance doctrine and view the lost chance itself as the injury include: *DeBurkarte v. Louvar,* Iowa Supr., 393 N.W.2d 131 (1986); *Delaney v. Cade,* 255 Kan. 199, 873 P.2d 175 (1994); *Wollen v. DePaul Health Ctr.,* Mo. Supr., 828 S.W.2d 681 (1992); *Perez v. Las Vegas Med. Ctr.,* 107 Nev. 1, 805 P.2d 589 (1991); *Herskovits v. Group Health Coop.,* 99 Wash.2d 609, 664 P.2d 474 (1983) (Pearson, J. concurring); *Richmond County Hosp. Auth. v. Dickerson,* 182 Ga.App. 601, 356 S.E.2d 548 (1987); *Aasheim v. Humberger,* 215 Mont. 127, 695 P.2d 824 (1985); *Ehlinger v. Sipes,* 155 Wis.2d 1, 454 N.W.2d 754 (1990).

caused the plaintiff to suffer the loss of a chance of recovery or an increased risk of contracting the disease.

The argument for treating increased risks as a distinct injury gained force with the publication of an influential article by Professor Joseph King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences,* 90 Yale L.J. 1353 (1981). He stated: *"What* caused a loss, however, should be a separate question from what the *nature* and *extent* of the loss are." *Id.* at 1363 (emphasis in original). Therefore, the loss of a chance of avoiding an adverse consequence, increased risk, should be viewed as an injury and be compensable. *Id.* at 1354. The all-or-nothing approach also fails adequately to deter negligent conduct if the professional serves a group with either very good chances or very bad chances of survival.[2]

The Connecticut Supreme Court has adopted the increased risk doctrine in a setting very similar to the case *sub judice. Petriello,* 576 A.2d 474. The plaintiff in *Petriello* suffered a perforated uterus due to negligence. As a result, she underwent a bowel resection and faced an 8—16% risk of bowel obstructions in the future. *Id.* at 482. With respect to the traditional view, the Court stated:

> By denying any compensation unless a plaintiff proves that a future consequence is more likely to occur than not, courts have created a system in which a significant number of persons receive compensation for future consequences that never occur and, conversely, a significant number of persons receive no compensation at all for consequences that later ensue from risks not rising to the level of probability.

This system is inconsistent with the goal of compensating tort victims fairly for all the consequences of the injuries they have sustained, while avoiding, so far as possible, windfall awards for consequences that never happen.

*Id.* at 482–483. The Court determined that the plaintiff "should not be burdened with proving that the occurrence of a future event is more likely than not, when it is a present risk, rather than a future event for which she claims damages." *Id.* The Court held that "in a tort action, a plaintiff who has established a breach of duty that was a substantial factor in causing a present injury which has resulted in an increased risk of future harm is entitled to compensation to the extent that the future harm is likely to occur." *Id.* at 484 (footnote omitted).

This approach addresses concerns about speculative claims for future harm. The requirement of a preceding physical injury prohibits plaintiffs from claiming that exposure to toxic substances, for instance, has created an increased risk of harm not yet manifested in a physical disease.

Courts which have expressed reservations about proportional loss of chance or increased risk have generally focused on the importance of traditional causation principles. *See Shively v. Klein,* Del.Supr., 551 A.2d 41, 44 (1988) ("the result would have been a drastic departure from the causation standards consistently applied in Delaware").[3] The Tennessee Supreme Court has described the loss of chance doctrine as "fundamentally at odds with the requisite degree of medical certitude necessary to establish a causal link between the injury of a patient and the tortious conduct of a physician."

---

**2.** Consider, for instance, a doctor who treats 100 patients negligently. In the absence of negligence, none would have died, but as a result of the negligence, 15 will die. Since any given patient is more likely than not to survive, the all-or-nothing approach would allow the doctor to escape all liability for the future 15 deaths. Since the risk created by the negligence did not rise to more than 50%, the doctor would claim that his negligence did not cause the deaths. Consider also a doctor who treats a different group of 100 patients negligently. In the absence of negligence, 60 would have died, but as a result of the negligence, an additional 15 patients, or a total of 75, will die. Since any given patient probably would have died in the absence

of negligence, it cannot be said that the doctor caused any particular death. Although we know, as this example is posited, that 15 additional deaths in each case were the result of negligence, the doctor never pays damages, under the all-or-nothing approach, for any of the deaths. *See also King,* 90 Yale L.J. at 1377.

**3.** States rejecting any form of loss of chance and, by implication, increased risk include: *Manning v. Twin Falls Clinic & Hosp.,* 122 Idaho 47, 830 P.2d 1185 (1992); *Fennell v. So. Md. Hosp. Ctr. Inc.,* 320 Md. 776, 580 A.2d 206 (1990); *Fabio v. Bellomo,* Minn.Supr., 504 N.W.2d 758 (1993); *Pillsbury–Flood v. Portsmouth Hosp.,* 128 N.H. 299, 512 A.2d 1126 (1986); *Kramer v. Lewisville*

*Kilpatrick v. Bryant,* Tenn.Supr., 868 S.W.2d 594, 602 (1993). "Legal responsibility in this approach is in reality assigned based on the mere possibility that a tortfeasor's negligence was a cause of the ultimate harm." *Jones v. Owings,* S.C.Supr., 456 S.E.2d 371, 374 (1995) (citing *Kramer v. Lewisville Memorial Hosp.,* Tex.Supr., 858 S.W.2d 397, 405 (1993)).

Then Chief Justice Riley of the Michigan Supreme Court dissented thoughtfully from that Court's adoption of loss of chance in *Falcon v. Memorial Hosp.,* Mich.Supr., 436 Mich. 443, 462 N.W.2d 44, 58–68 (1990) (Riley, C.J., dissenting). The dissent in *Falcon* objected to the loss of chance doctrine because it "fundamentally alters the meaning of causation," *id.,* 462 N.W.2d at 65, adding:

> "If liability is to be imposed in proportion to any chance at survival, then the medical profession will be subjected to a burden which is not imposed on any other group of defendants. I submit that nothing is to be gained by extracting payment from a defendant who cannot be shown to have caused the adverse result. Such a rule will not serve the deterrence function of tort law. It more likely will encourage the practice of costly defensive medicine in an attempt to avoid practically certain liability in the event of an unfavorable outcome."

*Id.* at 66 (citation omitted).

■ Increased risk can be viewed, however, as merely one element of damages when negligence has caused harm. As the certified question is posed, defendant's negligence caused the cancer to spread. But for the missed diagnosis, accepted treatments would, almost to a certainty, have stopped the cancer. The missed diagnosis caused the cancer to spread, and Plaintiff suffered surgery and chemotherapy. One additional element of his damages is the increased risk of a recurrence. In view of the risk of recurrence, he certainly has suffered an injury which is significantly greater than that which he would have suffered in the absence of negligence.

Judge Posner, in dissent, has argued for a similar approach. *DePass v. United States,*

7th Cir., 721 F.2d 203, 206–210 (1984) (Posner, J. dissenting). In *DePass* the plaintiff's leg was amputated as the result of an accident, and his condition placed him at increased risk of developing heart disease. *Id.* at 206. The trial judge refused to allow testimony that the plaintiff's life expectancy had been reduced by 11 years because the expert could not testify that he was likely to develop heart disease. *Id.* Judge Posner stated: "DePass was seriously injured; the only issue is the extent of his injury, an issue on which courts traditionally do not impose a heavy burden of proof on plaintiffs. See *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 562–65 [51 S.Ct. 248, 250–51, 75 L.Ed. 544] (1931) (citations omitted)." *Id.* at 208. Specifically with respect to increased risk damages he stated: "A tortfeasor should not get off scot-free because instead of killing his victim outright he inflicts an injury that is likely though not certain to shorten the victim's life." *Id.* Courts regularly consider statistical evidence to determine life expectancy. No one believes, however, that the person will probably die at any particular age. Life expectancy is merely a summation of the probabilities of death at any particular age. *Id.* at 209.

Compensating a tort victim for an increase in risk which results from some harm caused by a tortfeasor fits comfortably within traditional damage calculation methods. *Petriello,* 576 A.2d at 484. Plaintiff's life expectancy has been shortened because he has a higher risk of death from testicular cancer. Accordingly, he should be compensated.

## II. INDEPENDENT CAUSE OF ACTION FOR INCREASED RISK

■ Supreme Court Rule 41(a)(ii) authorizes the certifying court to "certify to this Court for decision a question or questions of law *arising* in any case before it ..." (emphasis added). This Court may accept certified questions in its discretion. Supr. Ct.R. 41(b). "The scope of the issues that may be considered in addressing a certified question is limited by the procedural posture of the case." *Rales v. Blasband,* Del.Supr.,

---

*Memorial Hosp.,* Tex.Supr., 858 S.W.2d 397 (1993) (in wrongful death case); *Jones v. Owings,*

S.C.Supr., 456 S.E.2d 371 (1995).

634 A.2d 927, 931 (1993). Since the parties have agreed with respect to questions I.b. and II.b., these questions of law are not at issue in the District Court. The undisputed facts also indicate that plaintiff is not claiming increased risk as an independent cause of action. Thus, without a dispute between the parties the issue has not "arisen" in the District Court.

■ Generally, this Court should answer certified questions only when the answer may be determinative of the outcome of the underlying litigation in the certifying court and there is no controlling precedent of this Court.[4] Since the parties have reached agreement with respect to questions I.b. and II.b., this Court respectfully declines to answer these questions.

## IV. CONCLUSION

Plaintiff has suffered present physical injuries caused by the defendant's negligence. Accordingly, Certified Questions I.a. and II.a. are answered in the **AFFIRMATIVE.**

4. This standard, drawn from the *Uniform Certification of Questions of Law Act* § 1, 12 U.L.A. 52 (1967), and followed in the majority of states, ensures that questions are ripe for judicial decision. For a comprehensive description of state procedures see Jona Goldschmidt, American Judicature Society, Certification of Questions of Law: Federalism in Practice (1995).