IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEAN SHERMAN, | § | |
| | § | No.   43, 2020 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below:   Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. K18C-06-009 |
| STEPHEN P. ELLIS, ESQUIRE, | § | |
| | § | |
| Defendant Below, | § | |
| Appellee. | § | |

Submitted:   December 2, 2020
Decided:   February 3, 2021


Before **SEITZ**, Chief Justice; **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices; and **SLIGHTS**, Vice Chancellor,[*] constituting the Court *en banc*.

Upon appeal from the Superior Court. **REVERSED AND REMANDED**.

Patrick K. Gibson, Esquire, Ippoliti Law Group, Wilmington, Delaware, for Appellant, Dean Sherman.

Gary W. Lipkin, Esquire (*Argued*), and Alexandra D. Rogin, Esquire, Eckert Seamans Cherin & Mellott, LLC, Wilmington, Delaware, for Appellee, Stephen P. Ellis, Esquire.




**VAUGHN**, Justice:

---

[*] Sitting by designation under Del. Const. Art. IV, § 12.

# I.    INTRODUCTION

This is a legal negligence case arising from the preparation of a premarital agreement. The Plaintiff-Appellant, Dean Sherman, appeals from the Superior Court's grant of summary judgment in favor of the Defendant-Appellee, Stephen P. Ellis, Esquire.   The appeal presents two issues.   One is whether the traditional "but for" test for proximate cause applies in a "transactional" legal negligence case, or whether it is sufficient that the alleged negligence creates an increased risk of future damages.   The other is whether the evidence satisfies the summary judgment requirement that there be no genuine issue as to any material fact.   As to the first issue, our conclusion is that the traditional "but for" test, not a risk of future damages test, is the appropriate test for determining proximate cause.   As to the second issue, our conclusion is that the evidence, viewed in the light most favorable to Mr. Sherman, raises a genuine issue of material fact and that summary judgment should have been denied.   This second conclusion requires that the judgment of the Superior Court be reversed and the case remanded for further proceedings.

# II.    FACTS AND PROCEDURAL HISTORY

In 1997, Mr. Sherman and Michelle Silverman decided to marry.[2]   They planned a "secret" wedding in Las Vegas, which is to say that they did not inform

---

[2] "Silverman" is the pseudonym that has been used for this party in previous proceedings before this Court, discussed herein.

their families or friends of their plans to be married.    Mr. Sherman desired to have a premarital agreement prepared and executed before the wedding.    At the time, Ms. Silverman had essentially no assets.    Mr. Sherman had assets of about $4,000,000.    About a month before the wedding, he gave Ms. Silverman a draft of a premarital agreement prepared by his attorney, Mr. Ellis, which contained terms favorable to Mr. Sherman.    The agreement provided, in pertinent part, that each party would "retain the title, management and control of the estates now owned by them . . . and all increases or additions thereto."[3]    The agreement also provided "that any property that either party may singly acquire . . . shall be owned and shall be held by the respective party as though this respective party had acquired it before the solemnization of the said marriage."[4]    In other words, any property which Mr. Sherman might acquire in his name alone during the marriage, even if defined by statute as marital property subject to division during divorce proceedings, would remain his separate property, not subject to division.    Each party waived any right to alimony.    The agreement provided that upon the death of one of them, the surviving party would make "no claim by inheritance, descent, dower, curtesy, or maintenance" against the deceased party's estate.[5]    The parties waived any right to take an elective share in the estate of the other.

---

[3]  App. to Appellant's Op. Br. at A0013 [hereinafter A__].
[4]  A0014.
[5]  A0013.

2

Mr. Sherman suggested that Ms. Silverman consult with an attorney about the agreement at his expense. He provided her with a list of attorneys. She selected an attorney from the list. The attorney she selected explained the downsides to her of signing the agreement. He attempted to negotiate substantive changes to the agreement to benefit Ms. Silverman, but Mr. Sherman's attorney refused all changes except a provision relieving Ms. Silverman of any responsibility for any debts created by Mr. Sherman before or during the marriage.[6]

On the day before the parties were scheduled to leave for their Las Vegas wedding, with the agreement at that point still unsigned, Ms. Silverman again met with her attorney. Earlier that day, before Ms. Silverman met with her attorney, Mr. Sherman gave Ms. Silverman a summary of his assets and liabilities. Ms. Silverman's attorney told her that the agreement was not in her best interest and advised her not to sign it. Anticipating that Ms. Silverman might sign the agreement against his advice, the attorney requested that Ms. Silverman sign an acknowledgement that his advice was that she not sign. She signed the acknowledgement and then signed the agreement. The next day the parties

---

[6] The record indicates that according to correspondence between Mr. Ellis and Ms. Silverman's attorney, Ms. Silverman's attorney wanted to delete language from the agreement that would have allowed Ms. Silverman to receive alimony; tried to make sure that Ms. Willoughby did not waive her rights to receive an elective share of Mr. Sherman's estate if Mr. Sherman died; and proposed that a retirement account be set up for Ms. Silverman. All of these proposals were rejected by Mr. Sherman and Mr. Ellis. A0120 (Judy M. Jones, Esq. Dep. Tr. at 82:18-84:15).

departed for their wedding in Las Vegas.

In 2015, Ms. Silverman filed for divorce. She contested the enforceability of the premarital agreement. She claimed that she did not sign the agreement voluntarily, that the agreement was unconscionable, that she had not been provided with a fair and reasonable disclosure of Mr. Sherman's assets, and that "she did not voluntarily and expressly waive in writing any right to that disclosure."[7]

The Family Court found that Ms. Silverman signed the Agreement voluntarily.[8] Since the Family Court found that she signed voluntarily, 13 *Del. C.* § 326(a)(2) required Ms. Silverman to establish the four following statutory elements to prevail on her claim that the agreement was unenforceable:

> (2) The agreement was unconscionable when it was executed ***and***, before execution of the agreement, that party:
>
> a. Was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;
>
> b. Did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; ***and***
>
> c. Did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party.[9]

---

[7] A0033.
[8] *Sherman v. Sherman*, No. CS15-01396 (Del. Fam. Apr. 4, 2018).
[9] 13 *Del C.* § 326(a)(2) (emphasis added).

4

The Family Court found that Ms. Silverman's evidence established all four elements and that the agreement was, therefore, unenforceable. It found the agreement to be unconscionable; that Ms. Silverman was not provided with a fair and reasonable disclosure of Mr. Sherman's assets; and that she did not have or reasonably could not have had an adequate knowledge of his property. It was undisputed that Ms. Silverman did not sign a waiver of any right to disclosure of Mr. Sherman's assets and liabilities beyond the disclosure provided.

The Family Court certified an interlocutory appeal of its ruling to this Court, which this Court accepted.[10]

While the interlocutory appeal was pending in this Court, Mr. Sherman filed this action in the Superior Court, alleging that Mr. Ellis was negligent in the preparation of the agreement. Specifically, Mr. Sherman alleged that Mr. Ellis neglected to include a waiver of disclosure of assets as described in 13 *Del. C.* § 326(a)(2)b. He also claimed that Mr. Ellis negligently failed to make a fair and reasonable disclosure of his assets. He further claimed that had Mr. Ellis not been negligent, Ms. Silverman "would not have been able to file the Motion [to set aside the agreement] and/or it would have been quickly defeated, and Mr. Sherman would not have incurred hundreds of thousands of dollars in legal expenses," and be subject to the "risk that [Ms. Silverman] will be able to obtain over $5,000,000 of Plaintiff's

---

[10] *Silverman v. Silverman*, 206 A.3d 825, 827 (Del. 2019) (en banc).

5

assets via the Divorce Action."[11]

In the interlocutory appeal, *Silverman v. Silverman,* this Court found that Mr. Sherman did provide Ms. Silverman with a fair and reasonable disclosure of his property and financial obligations.[12]   Since Mr. Sherman provided Ms. Silverman with a fair and reasonable disclosure of his property and financial obligations, we found that Ms. Silverman had failed to establish one of the four statutory factors required to establish unenforceability of the agreement. [13]   Accordingly, we reversed the Family Court's finding that the agreement was not enforceable.[14]

Mr. Sherman has continued to prosecute this suit in an effort to recover his legal fees and other expenses incurred in litigating the agreement's enforceability. The theory of his claim is that if Mr. Ellis had included the waiver of disclosure language described in 13 *Del. C.* § 326(a)(2)b in either the agreement or in a separate document signed at the time of execution of the agreement, one of the four elements needed to be shown to establish unenforceability of the agreement could not be shown, and a challenge to the enforceability of the agreement would have been unlikely.

The Superior Court described Mr. Ellis' motion for summary judgment as

---

[11] A0008.
[12] *Silverman*, 206 A.3d at 833-34.
[13] *Id*. at 834.
[14] *Id*.

6

presenting three arguments. The first was that there was no genuine issue of material fact regarding the standard of care. In support of this argument, Mr. Ellis relied upon his expert's opinion that the standard of care did not require that the disclosure waiver language be included in the agreement. The second argument was that Mr. Sherman's claim must fail as a matter of law because Mr. Sherman could not show that he would have received a better result in the divorce proceedings if the waiver language had been included. This is so, he argued, because the premarital agreement was ultimately determined to be enforceable. The third argument was that Mr. Sherman's claim was "fatally speculative."[15] This is so, Mr. Ellis argued, because a jury would have to engage in speculation before it could find that he had proximately caused damages to Mr. Sherman. Such speculation would concern a number of points, he argued, such as whether Ms. Silverman would have signed the agreement if the waiver of disclosure language had been included, or whether she would have challenged the agreement in any event, if it had been included.

In response, Mr. Sherman argued that issues of fact existed regarding the standard of care and whether Mr. Ellis deviated from the standard of care. Mr. Sherman also urged the court "to apply a relaxed approach when evaluating proximate cause of damages," and that damages are not speculative when such a

---

[15] *Sherman v. Ellis*, 2020 WL 30393, at *4 (Del. Super. Jan. 2, 2020).

7

relaxed standard is applied.[16]

The Superior Court found that issues of fact remained regarding the standard of care and whether Mr. Ellis breached the standard of care.[17] Next, the Superior Court found that the traditional "but for" test for proximate causation applies in a legal negligence case involving alleged transactional negligence.[18] Finally, the court decided that "applying that standard, because record evidence does not support an inference that Mr. Sherman's ex-wife would have likely accepted the [waiver] term, the trier of fact would be forced to speculate regarding whether Mr. Ellis's alleged negligence proximately caused Mr. Sherman harm."[19] For this reason, the court granted Mr. Ellis' motion for summary judgment.[20]

Mr. Sherman raises three claims on appeal. First, he claims that the Superior Court erred when it found that there was insufficient evidence to allow a jury to conclude that Ms. Silverman would have signed the agreement had the waiver of disclosure clause been included. Second, Mr. Sherman claims that the Superior Court erred by finding that the evidence does not create a genuine issue of material fact regarding proximate cause of damages. These two claims are related and essentially challenge the Superior Court's finding that there was no genuine issue as

---

[16] *Id.*
[17] *Id.* at 5-8.
[18] *Id.* at 13.
[19] *Id. at* 2.
[20] *Id.*

to any material fact.    Third, Mr. Sherman claims that the Superior Court erred by finding that the traditional "but for" test, rather than an increased risk of harm test, would apply to proximate causation.

### III.    STANDARD OF REVIEW

This Court reviews a grant of summary judgment *de novo* "to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law."[21]    "Questions of law, including the interpretation of statutes, are also reviewed *de novo*."[22]

### IV.    DISCUSSION

### A.

It is settled law in Delaware that to prevail on a legal negligence claim, the plaintiff must establish three elements: "a) the employment of the attorney; b) the attorney's neglect of a professional obligation; and c) resulting loss."[23]    In the context of legal negligence alleged to have occurred in the course of litigation, we have stated that "[i]n connection with the final element, the plaintiff must demonstrate that the underlying action would have been successful but for the

---

[21] *Homeland Ins. Co. of N.Y. v. CorVel Corp.*, 197 A.3d 1042, 1046 (Del. 2018) (en banc).
[22] *City of Wilm. v. Nationwide Ins. Co.*, 154 A.3d 1124, 1127 (Del. 2017).
[23] *Oakes v. Clark*, 2013 WL 3147313, at *1 (Del. June 18, 2013) (TABLE) (citing *Weaver v. Lukoff*, 1986 WL 17121, at *1 (Del. Jul. 1, 1986) (TABLE)); *See also Flowers v. Ramunno*, 2011 WL 3592966, at *2 (Del. Aug. 16, 2011) (TABLE).

9

attorney's negligence."[24]

Mr. Sherman argues that the traditional "but for" test for proximate causation should not apply in a legal negligence case involving alleged transactional negligence. He would have us adopt a more relaxed "increased risk of harm" standard. Under the traditional "but for" causation standard, Mr. Sherman will be required to show that he would not have suffered damages in the form of increased litigation expenses "but for" Mr. Ellis' alleged negligence. Under the standard he urges us to adopt, he would establish a prima facie case by showing that Mr. Ellis' alleged negligence created an increased risk that he would suffer such damages.

The practical difference between the two standards, as we understand it, is that under the "but for" test, Mr. Sherman will be required to prove that Ms. Silverman would have signed the agreement if the waiver of disclosure clause had been included, but under the "increased risk of harm" standard, he would be required to show merely that Mr. Ellis' "failure to include the statutory waiver language in the Agreement left it susceptible to challenge by Ms. [Silverman]," a challenge which did, in fact, occur and resulted in the increased litigation expenses.[25] Under this theory, Mr. Sherman would not be required to show that Ms. Silverman would have signed the agreement had the waiver of disclosure language been included.

---

[24] *Oakes*, 2013 WL 3147313, at *1 (citing *Weaver*, 1986 WL 17121, at *1).
[25] Appellant's Op. Br. at 33.

10

Mr. Sherman cites one Delaware case, *United States v. Anderson,* as supporting his position.[26] That case, however, involved a claim for medical negligence, not legal negligence. The "increased risk of harm doctrine" provides "that a person may recover damages if the person's risk of suffering a negative medical condition is increased because of medical malpractice."[27] Mr. Sherman's reliance on *Anderson* is misplaced. In that case, we held that "increased risk of harm accompanied by physical injury is a compensable element of damages under Delaware law."[28] We went on to conclude that "[c]ompensating a tort victim for an increase in risk which results from some harm caused by a tortfeasor fits comfortably within traditional damage calculation methods."[29] In that case we did not redefine the traditional "but for" test for establishing proximate cause. A more correct reading of the increased risk of harm doctrine is that an increased risk of harm is an element of damages in medical negligence cases after it is established that the medical professional was negligent and his negligence caused injury, i.e., where *causation has already been established*. In fact, in that case we declined to consider whether an independent cause of action could be brought for an increased risk of future cancer.

---

[26] 669 A.2d 73 (Del. 1995).
[27] *Id*. at 75 (quoting *U.S. v. Cumberbatch*, 647 A.2d 1098, 1100, n.3 (Del. 1994)).
[28] *Id*. at 74.
[29] *Id*. at 78.

Mr. Sherman has not pointed to any case from this Court, nor are we aware of one, where the proximate cause test he advocates has been adopted. In legal negligence cases involving alleged litigation negligence, we have applied the "but for" test for causation.[30] We see no basis to depart from that standard when the case involves alleged transactional legal negligence.

In rejecting Mr. Sherman's relaxed, "increased risk of harm" standard for proximate causation, the Superior Court, relying on a Supreme Court of Mississippi decision,[31] held that:

> Proving causation in a transactional malpractice claim, as in a litigation malpractice claim, requires proof that, but for the attorney's negligence, the plaintiff would have obtained a more favorable result. While ultimate success in litigation in a case like Mr. Sherman's does not per se bar a malpractice claim, when the claim involves alleged negligence in not proposing or including an additional term in a proposed agreement, the plaintiff-client must first show that the other party would have agreed to the omitted term.[32]

---

[30] *Oakes*, 2013 WL 3147313, at *1 (citing *Weaver*, 1986 WL 17121, at *1); *See also Flowers*, 2011 WL 3592966, at *2.

[31] *Sherman*, 2020 WL 30393, at *12 (citing *Gulfport OB-GYN, P.A. v. Dukes, Dukes, Keating & Faneca, P.A.*, 283 So.3d 676, 681 (Miss. 2019) ("Causation in a negligence-based legal-malpractice claim for a breach of the duty of care requires proof that, but for the attorney's negligence, a more favorable result would have been obtained. Thus, when the complaint is that the attorney should have proposed different or additional terms to a transaction, the malpractice plaintiff must show that such terms would have been accepted by the other party or that the client would not have entered into the deal and would have been better off for doing so. Absent such proof there exists no genuine issue of material fact as to causation of damages, and summary judgment is appropriate.")).

[32] *Id*. at *13.

We agree with this ruling. In order for Mr. Sherman to prevail in his legal negligence claim against Mr. Ellis, he must show that Ms. Silverman would have agreed to the omitted waiver of disclosure clause.

Mr. Sherman has cited authorities from other jurisdictions which he contends support applying the "risk of harm" standard in legal negligence cases. We find those cases unpersuasive, and decline to follow them.

**B.**

We disagree, however, with the trial court's grant of summary judgment. In the agreement, Ms. Silverman assented to the waiver of many rights, including a waiver of alimony, a waiver of the elective share, a waiver of any rights of any share in Mr. Sherman's estate, and even a waiver of her rights in marital property which Mr. Sherman might acquire in his name alone during the marriage. Reviewing the grant of summary judgment *de novo*, we think that the sweeping extent of these waivers, together with Ms. Silverman's acknowledgement that her attorney advised her not to sign the agreement, her signing after almost all attempts at negotiation had failed, and the attendant facts and circumstances, create a circumstantial, jury question of fact as to whether she would have signed had the clause waiving the disclosure of assets beyond the disclosure provided been included. Accordingly, we believe that the grant of summary judgment must be reversed.

13

**C.**

Mr. Ellis has filed a cross-appeal in which he states the question presented as follows: "Whether the Superior Court erred in holding that a waiver of disclosure of assets provision in a premarital agreement bars any subsequent challenge to that agreement on unconscionability grounds, even if the disclosure of assets has not been fair and reasonable."[33] He argues that 13 *Del C.* §326(a)(2)b should not be read in such a manner. It should be read, he argues, to mean that the parties waive their rights to additional, supplemental or future disclosures. It should not be read, he argues, to shield a party from making inaccurate or fraudulent disclosures.

When the agreement involved in this case was before us in *Silverman v. Silverman*, we stated that "to render the premarital agreement unenforceable under the statute, the spouse contesting enforcement must prove that the agreement was unconscionable *and* prove three other grounds – lack of fair and reasonable disclosure of the other spouse's property or financial obligations, non-waiver, and lack of adequate knowledge of Husband's property and financial obligations."[34] We reaffirm that ruling here.

In this case the waiver of disclosure clause was not included in the agreement. Therefore, how it might be interpreted if it were included is not before us. In

---

[33] Appellee's Ans. Br. at 18.
[34] *Silverman*, 206 A.3d at 832-33.

14

*Silverman*, we found that the disclosure in this case was, in fact, a fair and reasonable disclosure of Mr. Sherman's financial condition. Therefore, the effect of an unfair, unreasonable, or fraudulent disclosure is not before us. We are not inclined to consider questions which are beyond the scope of the facts of this case.

## V. CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is reversed and the matter is remanded for further proceedings consistent with this opinion.